## HERSHFIELD ET AL., APPELLANTS, *v.* ROCKY MOUNTAIN BELL TELEPHONE COMPANY, RESPONDENT.

[Submitted October 17, 1891. Decided May 2, 1892.]

TOWN SITES— *Title to streets.* —An original claimant of a lot in a town site, entered according to the Act of Congress of March, 1867 (§ 2387, Rev. Stats. U. S.), and the territorial legislation relating thereto (Sess. Laws, 1867), was entitled to receive a deed therefor from the probate judge, in whom title was vested as trustee, only after the town site had been surveyed into blocks, lots, streets, and alleys, and a plat of such survey filed in the office of the county recorder, after which filing the streets and alleys designated in such plat remained dedicated to public use forever, and therefore such claimant acquired no title in fee to any portion of a street or alley upon which his lot abutted.

SAME— *Same — Telephone companies — Erection of poles.* —In an action to restrain by injunction the erection of a telephone pole in a street upon the edge of the sidewalk in front of plaintiff's lot, an averment in the complaint that since the entry of the town site that portion of the street or sidewalk upon which defendant proposed to erect a pole was cut off from plaintiff's lot by their predecessors in interest for street purposes, and for the benefit of their property, is insufficient to show title in fee to the portion of the sidewalk in question, in the absence of any averment showing that such portion had been cut off since the conveyance of the lot to plaintiff's predecessors by the town-site trustee, and therefore plaintiff could not prevent such use, in that it imposed an additional servitude upon an easement granted by their predecessors in interest.

TELEPHONE COMPANIES— *Use of city streets.* —The erection of telephone poles to a reasonable extent in the streets of a city is within the uses to which the streets may be lawfully put when such use is sanctioned by the duly authorized municipal agents.

SAME— *City charter—Power to regulate construed.* —The grant in a city charter of power to license, tax, and regulate telephone companies carries with it the power to grant such companies the right to erect and maintain poles in the street.

FOREIGN CORPORATIONS— *Neglect to file certificate.* —A non-compliance by a foreign corporation, doing business in this State, with section 442, fifth division of the Compiled Statutes, which requires the filing by such corporation of a copy of its charter or certificate with the county recorder, and for a neglect so to do subjects it to a penalty, and renders void all its acts and contracts during the period of such neglect, is of no avail to a plaintiff seeking to enjoin an act of such corporation where the complaint fails to state a cause of action. (*King* v. *National M. & E. Co.* 4 Mont. 1, cited.)

*Appeal from First Judicial District, Lewis and Clarke County.*

Action for an injunction. Defendant's demurrer to the complaint was sustained by HUNT, J.

*McConnell & Clayberg*, for Appellants.

I. The respondent, being a foreign corporation, can only have existence in this State by virtue of interstate comity. (*Copper Manuf. Co.* v. *Ferguson*, 113 U. S. 727; *Powder River Cattle Co.* v. *Custer County*, 9 Mont. 145; 8 Am. & Eng. Encycl. of Law, pp. 330, 331, and notes 332, 333, 335, 338, 339, 340.) The clause upon which appellants rely was not in the statute (ch. xxiv. p. 720, 5th div. Comp. Stats.) at the time of the decision in *King* v. *National M. & E. Co.* 4 Mont. 1. The clause reads: "And all acts and contracts made by such corporation during the time it shall so fail and neglect to file said statement and certificate shall be void and invalid as to such corporations." If, then, such foreign corporation, in the course of its business, makes a contract or does any other act, such contract or act will be held as to it void and invalid, and the authorities are uniform that where the corporation brings an action to enforce such contract, it will be repelled. (*Cincinnati M. H. A. Co.* v. *Rosenthal*, 55 Ill. 85; 8 Am. Rep. 626; *National Mut. F. Ins. Co.* v. *Pursell*, 10 Allen, 232; *Roche* v. *Ladd*, 1 Allen, 441; *Thorne* v. *Travellers' Ins. Co.* 80 Pa. St. 15; 21 Am. Rep. 89; *Bank of Columbia* v. *Page*, 6 Or. 431; *In re Comstock*, 3 Sawy. 218; *Rising Sun Ins. Co.* v. *Slaughter*, 20 Ind. 520.) There is nothing in the case of the *Powder River Cattle Co.* v. *Custer County*, 9 Mont. 145 which contravenes this doctrine. In .that case the distinction is that while a foreign corporation in this State can own property, and can sue and be sued, it can never bring suits for the purpose of enforcing a right growing out of its own acts or contracts which are expressly declared to be void and invalid by our statute. (See, also, *Copper Manuf. Co.* v. *Ferguson*, 113 U. S. 727.)

II. The action of the city council in passing ordinance No. 187, granting an easement in the streets to the respondent, is *ultra vires*, and void. (*a*) The city has no power except what it derives from its charter. (Dillon on Municipal Corporations, §§ 89, 698; *Smith* v. *Newburn*, 70 N. C. 15; 16 Am. Rep. 766; *Cook Co.* v. *McCrea*, 93 Ill. 236; *Ottawa* v. *Carey*, 108 U. S. 110; *Kelly* v. *Town of Milan*, 21 Fed. Rep. 842.) (*b*) "Any fair, reasonable doubt concerning the existence of the power is

resolved by the court against the corporation, and the power is denied." (Dillon on Municipal Corporations, § 89; *Williams* v. *Davidson*, 43 Tex. 33; *Brenham* v. *Brenham Water Co.* 67 Tex. 542; *Hanger* v. *Des Moines*, 52 Iowa, 193; 35 Am. Rep. 266; *City of Corvallis* v. *Carlile*, 10 Or. 139; 45 Am. Rep. 134; *Kirkham* v. *Russell*, 76 Va. 956; *Tax Collector* v. *Dendinger*, 38 La. An. 261.) (c) The implied or incidental power of a municipal corporation must be germane to the purpose for which it was created. (*Mayor* v. *Yuille*, 3 Ala. 137; 36 Am. Dec. 441; *Harris* v. *Intendant*, 28 Ala. 577; *Intendant* v. *Chandler*, 6 Ala. 899.) (d) Courts adopt a strict, rather than a liberal construction of powers. Any ambiguity or doubt arising out of the terms used by the legislature must be resolved in favor of the public. (*Minturn* v. *Larue*, 23 How. 435; *Thompson* v. *Lee Co.* 3 Wall. 327; *Thomas* v. *Richmond*, 12 Wall. 349; *Clark* v. *Davenport*, 14 Iowa, 495; *Leonard* v. *Canton*, 35 Miss. 189; *Lafayette* v. *Cox*, 5 Ind. 58.) (e) The language of ordinance No. 187 is, "There is hereby granted, etc., for a full term of twenty years." Such a grant is a franchise arising to the dignity of an easement in the streets of the city, and when accepted, becomes a contract with all the inviolable character which the Constitution attaches to contracts. (*Milhau* v. *Sharp*, 27 N. Y. 611; 84 Am. Dec. 314–316; *Nash* v. *Lowry*, 37 Minn. 261; *People* v. *West Side R. R. Co.* 36 Am. & Eng. R. R. Cas. 70; *People* v. *Chicago West. Div. Ry. Co.* 18 Ill. App. 125; *Grand Rapids E. L. & P. Co.* v. *Grand Rapids E. E. L. & F. G. Co.* 33 Fed. Rep. 666, last paragraph.) (f) The only authority which the city possesses relative to telephone companies is found in section 44 of its charter. This provides that the city council shall have power to "license, tax, and regulate auctioneers, merchants, peddlers, etc., telephone companies, etc., and all other branches of business." (g) As to the meaning and construction to be given to the words "to license, tax, and regulate," see Bouvier's Law Dictionary, tit. "License"; Dillon on Municipal Corporations, § 319, note 1; § 357, note 2; § 764; Desty on Taxation, § 611; *Ash* v. *People*, 11 Mich. 350; 83 Am. Dec. 740; *City of Kansas* v. *Carrigan*, 18 Mo. App. 214; *City of St. Louis* v. *Spiegel*, 75 Mo. 146.

III.   The fee to the *locus in quo* is in the appellants, subject to the easement of the public for the ordinary purposes of a highway.   The erection of telephone poles upon a street or other highway, where the fee is in the abutting owner, is the imposition of a new servitude. (Lewis' Eminent Domain, § 131; Dillon on Municipal Corporations, § 698 *a*; Elliott on Roads and Streets, p. 553, et seq.; *Board of Trade Tel. Co.* v. *Barnett,* 107 Ill. 507; 47 Am. Rep. 453; *Western Union Tel. Co.* v. *Williams,* 86 Va. 696; 19 Am. St. Rep. 908; *Stowers* v. *Postal Tel. Cable Co.* 68 Miss. 559; 24 Am. St. Rep. 290; *Chespeake & P. Tel. Co.* v. *McKenzie,* Md. March 4, 1891, 21 Atl. Rep. 698; *American etc. Tel. Co.* v. *Pearce,* 71 Md. 535; *Broome* v. *New York etc. Tel. Co.* 42 N. J. Eq. 141; *Metropolitan etc. Tel. Co.* v. *Colwell Lead Co.* 50 N. Y. Sup. Ct. 488; *Atlantic etc. Co.* v. *Chicago Ry. Co.* 6 Biss. 158; *Willis* v. *Erie etc. Co.* 37 Minn. 347; *Dusenbury* v. *Western Union Tel. Co.* 64 How. Pr. 1206.   *Contra, Pierce* v. *Drew,* 136 Mass. 75; 49 Am. Rep. 7; *Julia etc. Assoc.* v. *Bell Tel. Co.* 88 Mo. 258; 57 Am. Rep. 398; *McCormick* v. *District of Columbia,* 4 Mackey, 396; 54 Am. Rep. 284.) The cases in Massachusetts and Missouri were decided by a divided court.   While the contemplated use of a highway is not to be limited to such vehicles or modes of travel as may be in use at the time of dedication, and, hence, by the great weight of judicial opinion, street railways with cars propelled by horse-power, are not regarded as imposing such a new servitude as will entitle the owner of the fee to additional compensation, still, street cars propelled by steam are so regarded.   At this point the line of distinction has been drawn by the great weight of judicial authority.   (*Story* v. *New York E. R. R. Co.* 90 N. Y. 122, 126; 43 Am. Rep. 146; *Lahr* v. *Metropolitan E. Ry. Co.* 104 N. Y. 268; *In re New York E. R. R. Co.* 70 N. Y. 327; Elliott on Roads and Streets, 526, 527, 535; *Williams* v. *New York Central R. R. Co.* 16 N. Y. 97; 69 Am. Dec. 651; *Wager* v. *Troy Union R. R. Co.* 25 N. Y. 526, 535; *Jersey City & Bergen R. R. Co.* v. *Jersey City & Hoboken Horse R. R. Co.* 20 N. J. Eq. 61; *Imlay* v. *Union Branch R. R. Co.* 26 Conn. 249, 255; 68 Am. Dec. 392; *Grand Rapids & Indiana Ry. Co.* v. *Heisel,* 38 Mich. 62; 31 Am. Rep. 306; *Sherman* v. *Milwaukee L. S. & W. R. R. Co.*

40 Wis. 645; *Kucheman* v. *Chicago etc. Ry.* 46 Iowa, 366; *Kaiser* v. *St. Paul etc. R. R. Co.* 22 Minn. 149; *Southern Pacific R. R. Co.* v. *Reed,* 41 Cal. 256; Cooley's Constitutional Limitations, 546, 550; 2 Dillon on Municipal Corporations, §§ 722, 725.)

IV. An injunction will lie, restraining the respondent from erecting said pole upon the ground that it is a continuing and permanent trespass, and that compensation must *first* be made to the owner of the fee before the right of way can be acquired. (Elliott on Roads and Streets, 537, 538; *Commomw.* v. *Pittsburg R. R. Co.* 24 Pa. St. 159; 62 Am. Dec. 372; *Walker* v. *Emerson,* 89 Cal. 456; *Robert* v. *Sadler,* 104 N. Y. 234; 58 Am. Rep. 498; *Learned* v. *Castle,* 78 Cal. 461; *Richards* v. *Dower,* 64 Cal. 64; *Railway Co.* v. *Lawrence,* 38 Ohio St. 41; 43 Am. Rep. 419; *Manchester Cotton Mills* v. *Town of Manchester,* 25 Gratt. 828; *Cameron* v. *Board of Supervisors,* 47 Miss. 265; *City of Paris* v. *Mason,* 37 Tex. 451; *Sidener* v. *Norristown etc. Co.* 23 Ind. 626; *Pierpoint* v. *Town of Harrisville,* 9 W. Va. 218; *Southwestern R. R. Co.* v. *Southern etc. Tel. Co.* 46 Ga. 46; Pomeroy's Equity Jurisprudence, § 1347; *Jerome* v. *Ross,* 7 Johns. Ch. 315; 11 Am. Dec. 485, and note on p. 507; *Sankey* v. *St. Mary's Academy,* 8 Mont. 265; *Davenport* v. *Kleinschmidt,* 6 Mont. 502; *Milhau* v. *Sharp, supra.*)

*H. G. McIntire,* for Respondent.

I. Even if it were true that respondent had not complied with the Montana statute relating to foreign corporations the result claimed by appellants would not follow. This is not a case where the foreign corporation is seeking to enforce a contract made in violation of law; but one wherein it is defending itself against the aggressive acts of others. That it may do so is consonant both with reason and authority. (*Powder River Cattle Co.* v. *Custer County,* 9 Mont. 150.)

II. The city council did not exceed its power in granting ordinance 187. The legislature conferred upon it the right to tax, license, and regulate telephone companies. A license is defined as a "privilege granted to carry on some occupation or exercise of some right which could not be legally exercised with-

out the grant of such license. The pursuit of the prohibited occupation becomes a franchise in the power of the municipality to grant." (Horr & Bemis on Municipal Ordinances, § 257.) The city under the power "to regulate telephone companies may designate when, where, and how they may exist and transact their business." (Horr & Bemis on Municipal Ordinances, § 30; *Cronin* v. *People*, 82 N. Y. 318; 37 Am. Rep. 564.) By statutes, Compiled Laws, page 735, section 480, telegraph companies may be formed, and when formed may erect poles, etc., on the public roads, provided the public are not incommodated. Telephone lines are *ejusdem generis* with telegraph lines (*Wisconsin Tel. Co.* v. *Oshkosh*, 62 Wis. 35; *Franklin* v. *Northwestern Tel. Co.* 69 Iowa, 97; *Iowa Union Tel. Co.* v. *Board etc.* 67 Iowa, 250; *City of St. Louis* v. *Bell Tel. Co.* 96 Mo. 623; 9 Am. St. Rep. 370), and consequently have the same right.

III. The *locus in quo* is a portion of one of the public streets of the city of Helena. It always was a portion of Main Street as laid out, and was not dedicated either by appellants or their predecessors in interest. The city of Helena was laid out under the "town-site law." Under that law the fee of the streets is in the city as the successor of the town-site trustee. That law dedicated the streets to the public use. (Comp. Laws, p. 1220, § 2014; Comp. Laws, p. 1226, § 2036; *Denver* v. *Clements*, 3 Colo. 480; *Denver etc. R. R. Co.* v. *Domke*, 11 Colo. 250; *Chicago etc. R. R. Co.* v. *Joliet*, 79 Ill. 25.) When the town site was laid out the title fee was in the United States. Neither appellants nor their predecessors in interest ever owned this land, nor could the town-site trustee have conveyed the same to them. A conveyance by him of anything but the lots would be unauthorized and void under the town-site act. Appellants never had any further interests in the streets than the general public. The streets are dedicated to public use and urban needs which would include telephone poles and wires. (Lewis' Eminent Domain, § 172; Mills on Eminent Domain, §§ 14 a, 21.) By section 1 of ordinance 187 the right to use the poles erected thereunder for fire and police purposes is reserved to the city. In other words, they are made a part of the governmental machinery of the city. That this is a "public use" there can be no question. The appellants do not own the *locus*

*in quo,* and are therefore not entitled in any event to compensation under the law relating to eminent domain. (High on Injunctions, § 637; *Irwin* v. *Great Southern Tel. Co.* 37 La. An. 63; *People* v. *Kerr,* 27 N. Y. 188.)

IV.   The erection of telephone and telegraph poles in the streets of a city is an ordinary urban servitude, and a legitimate use of the streets, of which the abutting owners cannot complain, and for which they are not entitled to compensation. *(Pierce* v. *Drew,* 136 Mass. 75; *Julia etc. Assoc.* v. *Bell Tel. Co.* 88 Mo. 258; 57 Am. Rep. 398; *McCormick* v. *District of Columbia,* 5 Mackey, 396; 54 Am. Rep. 284; *Irwin* v. *Great Southern Tel. Co.* 37 La. An. 63; *Taggart* v. *Newport St. Ry. Co.* 16 R. I. 669.)

V.   A fatal defect in appellant's complaint which, if there were no other reason, justified the lower court in dissolving their injunction and sustaining their demurrer to the complaint, is that appellants do not allege any facts showing that they were injured or damaged by any act complained of.   They do not allege, for instance, that ingress into or egress from their building is interfered with, or that their windows are darkened, or that the pole complained of depreciates the value of or affects their building in any way.   The general allegation of irreparable injury is wholly insufficient on which either to predicate an application for an injunction, or to ask for damages. (1 High on Injunction, §§ 33, 886; *McCormick* v. *Riddle,* 10 Mont. 467.)   Under the law relating to eminent domain there is no right to compensation where no special damages are suffered. (*Gay* v. *Mutual Union Tel. Co.* 12 Mo. App. 485; Lewis on Eminent Domain, § 235; *Greene* v. *New York etc. R. R. Co.* 65 How. Pr. 165.)   To insist that condemnation proceedings should be had in a case where the party is not damaged, where nothing is taken from him, wherein he is not injuriously affected is about as vain a thing as can be imagined.

VI.   A telephone pole, when authorized by lawful authority, is neither a nuisance nor a continuing trespass, and appellants' authorities on that point are inapplicable.   The common council of Helena has the control of the streets of the city, and also power to declare what are nuisances therein.

HARWOOD, J.—Appellants brought this action "on their own behalf, and on behalf of others similarly situated," to obtain an injunction permanently restraining respondents from erecting a certain telephone pole at the place hereinafter described, in the city of Helena.

Respondent demurred to the complaint on the ground that the plaintiffs failed to allege therein facts sufficient to constitute a cause of action, which demurrer was, upon hearing and consideration, sustained, and the temporary injunction dissolved. Plaintiffs elected to rest upon their complaint without amendment, and judgment was therefore entered in favor of defendant, from which plaintiffs appeal, assigning error in sustaining said demurrer, and contend that sufficient facts are alleged to constitute a cause of action.

The facts sufficient for the discussion of the points considered on this appeal, as found in the complaint, are alleged substantially as follows: That defendant is a corporation organized and existing under the laws of the Territory of Utah, and is doing business in the city of Helena, county of Lewis and Clarke, and elsewhere in this State; that said city, by ordinance No. 187, a copy of which is annexed to plaintiff's complaint as a part thereof, granted to defendant for the term of twenty years the right to erect and maintain poles and wires, with the arms and braces necessary thereto, over and above the streets, avenues, alleys, and public grounds of said city, necessary to establish and operate a telephone service therein; that, under the privilege granted by said ordinance, respondent has, by means of poles and wires, established, and is operating, a telephone service in said city. Said ordinance, in addition to said grant, provides that "all of the rights hereby granted to be subject to such terms and conditions as the city council of the said city may from time to time prescribe, and expressly reserving the right to require the said company to place its wires under ground if the city shall at any time require: *provided,* that said company shall at all times, when so requested by the city authorities, permit their poles and fixtures to be used for the purpose of placing and maintaining thereon any wires which may be necessary for the police and fire departments of said city."

Plaintiffs further allege that they are the owners of lot 7, in block numbered 30, in the original town site of the said city of Helena, being about thirty-five feet front on Main Street, and one hundred and seventeen feet deep, bounded on the east by Main Street, and on the south by Edwards Street, upon which lot appellants have erected a large four-story building, fronting on said Main and Edwards Streets, which building is used as a business block for the purpose of banking and offices.

That prior to the entry of said town site of the city of Helena the predecessors of plaintiffs in interest in said premises were inhabitants of said city, and occupied and possessed said premises as the owners thereof, against all others except the United States of America; that as such occupants, possessors, and owners they established and laid out in front of said premises a street designated as "Main Street," also another designated "Edwards Street," for the ordinary use and purpose of streets and highways; that while the said premises were so occupied and possessed by the predecessors in interest of the plaintiffs, and while said streets were so laid out, established, and used, the probate judge, acting as county judge of the county of Lewis and Clarke, as by law provided, did in the year 1869 enter and acquire title to the said land in question, among other lands, from the government of the United States, as the town site of said city of Helena, in trust, for the use of the inhabitants of said city; "that thereafter the said probate judge, in discharge of his trust in that behalf, conveyed the premises hereinbefore described to the predecessors in interest of these plaintiffs, describing the same as bounded by said Main and Edwards Streets, who in like manner conveyed the same to plaintiffs and their grantors, by reason whereof these plaintiffs became and are the owners of the fee in said premises, and to the center of said Main and Edwards Streets, subject to the ordinary use and purpose thereof as streets and highways;" that since the entry of said town site for the use of the inhabitants of said city, "and while the predecessors in interest of these plaintiffs were so the owners, seized and possessed of the premises aforesaid, they cut off from their said lot ten feet in front thereof and adjacent to said Main Street, for the sole purpose of allowing the same to be used as a street and highway, for the purposes of travel, and for the convenience

and benefit of their said property, and not to the injury and detriment thereof;" that the same has ever since been solely and exclusively used for such purpose up to the time of the attempted erection of the poles, wires, and branches by the said defendant, under the pretended rights secured to it by the franchise hereinbefore set forth; that under such pretended authority granted by said ordinance defendant has commenced the digging of a hole for the planting of a pole in the edge of the sidewalk immediately in front of plaintiff's premises aforesaid, upon said Main Street, and within said ten feet cut off by appellants from their said lot for street purposes, as aforesaid; that respondent instituted no condemnation proceedings under the laws of eminent domain of this State, whereby to obtain the right to use said land for the purpose of erecting said pole thereon; that said acts of respondent upon said land are in violation of the rights of appellants as the owners in fee thereof; that the height of said pole is forty-five feet, and arms and braces are to be attached to it, and a large number of wires are to be strung thereon, over and above said street, and immediately in front of said building of appellants, and within ten feet thereof; that the erection of said pole and arms and wires would be an injury to the freehold of appellants; that, for a period of two years last past, defendant has maintained a pole on the other side of Edwards Street, opposite the point where the one in question is to be placed, which defendant proposes now to discontinue; "that, as plaintiffs are informed and believe, said pole (as formerly placed) is at a proper and convenient place for said company, and is sufficient to carry and maintain all necessary wires of said company;" that there is no necessity for changing the site of said pole as proposed, but that all business of defendant can be as conveniently conducted with said pole at the former place.

There are no allegations in the complaint showing that in the proposed planting of said pole at the place described, respondent had located the same contrary to the permission obtained from the city authorities; nor that by the arrangement of the poles set up by respondent under such permission there has been discrimination against appellants by way of locating the pole in question in such a position as to work an unneces-

sary disadvantage or inconvenience to the use of plaintiffs' property; nor that the same might be located in a different position in front of their lot, with less inconvenience to them in the use of their property and to the public, and at the same time answer all necessary purposes of defendant in establishing and operating said telephone service. In short, there are no facts alleged showing a peculiar or unnecessary or greater inconvenience to plaintiffs or their property by the erection of said pole at the place proposed than results to others in like situation as to poles planted on said street.

There is no doubt, considering the nature of the matter under discussion, that a system of poles could be so arranged along the street as to answer the necessity of respondent's business, and avoid placing one in the street in front of plaintiffs' lot, by placing the necessary poles in front of other lots. The allegations of the complaint bring to the court the general proposition as to whether defendant may, under the authority granted by said city, erect the necessary appliances for a telephone service in the streets along the front of plaintiffs' lot, without any peculiar, unnecessary, or greater inconvenience to plaintiffs at that place than to others in front of whose lot a pole is erected.

Appellants contend that they have alleged facts showing that they own the freehold estate not only in their said lot, but also to the center of the said streets adjoining; but, apparently conceding that they can recede somewhat from this proposition, they contend that, if that is not sustained, they still have shown that they own the fee in that portion of the street where said pole is about to be erected, namely, within ten feet of the front of their said lot on Main Street. Much emphasis is laid upon this point by appellants' counsel. Inasmuch as this is an action to prevent the erection of said pole under the authority granted by the city, it is no doubt important to consider whether plaintiffs own the fee in the street at that point, although, in actions by abutting lot owners to recover damages alleged to have resulted from the erection of such poles, or street railways, or other erections in the street, it has been questioned in the more recent cases whether the fact that the lot owner also owns the fee in the street is of so great importance as formerly supposed. (2 Dillon on Municipal Corpo-

rations [4th ed.], §§ 657, 658, 698, 705, and cases cited.)   We think, with appellants' counsel, that in a case like this, however, where the object is to prevent the erection of said pole without condemnation proceedings under the law of eminent domain, the ownership of the fee in the street is a material question, and we will therefore examine the complaint to see whether the facts alleged are sufficient to show that plaintiffs own the fee in the land at the place where said pole is about to be erected.

It is alleged that said town site was entered in trust for the use and benefit of the inhabitants thereof, under an act of the Congress of the United States entitled "An act for the relief of the inhabitants of cities and towns upon the public lands," approved March 2, 1867.   In section 1 of that act it is provided: "Whenever any portion of the public lands have been or may be settled upon and occupied as a town site, not subject to entry under the agricultural pre-emption laws, it is lawful in case such town be incorporated, for the corporate authorities thereof, and, if not incorporated, for the judge of the county court for the county in which such town is situated, to enter at the proper land office, and at the minimum price, the land so settled and occupied, in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust as to the disposal of the lots in such town, and the proceeds of the sales thereof to be conducted under such regulations as may be prescribed by the legislative authority of the State or Territory in which the same may be situated." (§ 2387, Rev. Stats. U. S.; 14 U. S. Stats. at Large, p. 541.)

The legislature of Montana Territory in 1867, before the entry of said town site, had enacted a statute relating to the subject of the entry of town sites under said act of Congress, which provides as follows: "Sec. 3.   And the said incorporate authorities, or judge of the Probate Court, as the case may be, shall within three months from and after the entry of such town site, unless a survey and an accurate plat thereof has previously been made, cause the same to be surveyed, and a plat thereof made, which said survey and plat thereof shall conform as near as may be to the existing rights, interest, and

claims of the occupants thereof. Said plat and survey shall be submitted to and accepted by the board of county commissioners in the county where the said town is situated. Sec. 4. Such townsite shall be surveyed into blocks, lots, streets, and alleys, but no lot shall exceed in area four thousand two hundred square feet; and the plat of such town shall be filed in the office of the county recorder for the county in which such town is situated; and thereafter the streets and alleys designated in such plat shall remain dedicated to public use forever." Sections 3 and 4 of "an act relative to the pre-emption of town sites upon public lands, and the disposal of trusts created thereby." (Sess. Laws, 1867, p. 60.)

In section 5 of the same act it is provided that "immediately after such survey and plat has been made, or, if a survey and plat has been made previous to the entry according to the provisions of section 3 of this act, then immediately after the entry of the lands at the proper land office, as provided in the first section of this act, the corporate authorities, or the probate judge, as the case may be, shall cause a notice to be published, . . . . requiring every claimant or claimants of any town lot or lots to file in the office of such incorporate authorities or probate judge . . . . a statement of his or their claims within two months from the date of the first publication of such notice."

Other sections of said act provide for proving the claims of prior occupants of lots in the townsite, and that upon sufficient proof "the probate judge, or corporate authorities, as the case may be, shall, upon payment of the fees prescribed, . . . . make to such claimant or claimants a good and sufficient deed for such lot or lots." Said act was amended by the fifth session of the legislative assembly of said Territory in 1869, but not in respect to the provisions above quoted. (5th Sess. Laws, p. 80.)

It is alleged that before the entry of said town site plaintiff's predecessors in interest occupied and possessed said premises as the owners thereof, as against all except the United States; and that said Edwards and Main Streets were established in front of said premises, and used as highways by the inhabitants of said city for the ordinary use of streets and highways.

Now, the statute, as we have seen, provided that when a

town site was located and entered the same should be platted, showing the blocks, lots, streets, and alleys thereof, and that the survey and plat "shall conform, as near as may be, to the existing rights, interests, and claims of the occupants thereof." If such plat was not made before the entry, the same was required to be made within three months from and after the entry of such town site, and filed in the proper office, "and thereafter the streets and alleys designated in such plat shall remain dedicated to the public use forever." This was required to be done before any conveyance of lots in such town to the various claimants. How, then, could the predecessors of plaintiffs have obtained the fee in the streets of such town site, as established and shown by the plat? The fee in the portion of land which was occupied by the streets and alleys was first in the United States, and was granted to said trustee, who was enjoined by law to see that a survey and plat was made and filed in the proper office, showing the blocks, lots, streets, and alleys, and thereby the streets and alleys became dedicated to the public use, before any conveyance of lots to individuals should be made; and, in the absence of showing to the contrary, we must presume that all the requirements of law in these respects were complied with.

When this appeal was argued this court gained the impression from the argument that the complaint showed that after such entry of said town site, and conveyance of said lot to plaintiffs' predecessors, bounded by Main and Edwards Streets, they cut off ten feet from the front of said lot on Main Street, and devoted it to street purposes; but on looking at the complaint such is not found to be the allegation. It is alleged that, since the entry of said town site, that portion of said lot was cut off for street purposes. That may have been the case. The law provided that within three months after the entry the proper survey and plat should have been made and filed, and that such survey should conform, as near as may be, to the former conditions as to lots, streets, and alleys. It may be that since the entry of the town site, in adjusting the streets and alleys, some portion of the said lot, as occupied by plaintiffs' predecessors, was cut off by them, to become part of said Main Street in front of said lot. But it is not shown by any facts alleged in the complaint that, after the predecessors of plaintiffs obtained

title to said lot in fee, as bounded by Main Street on the east, they then cut off ten feet from the front of said lot, and devoted such strip of land to street purposes, for the ordinary uses as a highway. The allegations of plaintiffs' complaint do not warrant the proposition appellants contend for, namely, that plaintiffs' predecessors obtained title in fee to the center of the street, or to any portion of the street, by conveyance from the probate judge of said lot, bounded on the east by Main, and on the south by Edwards Street; for there are no allegations in the complaint showing that since the conveyance of said lot in fee to them or their predecessors any portion thereof has been cut off for street purposes. In other words, there are no allegations of plaintiffs' complaint whereby it is shown that they or their predecessors in interest ever acquired the title in fee to any portion of the land occupied by Main Street at the place in question.

Under this state of facts we are of opinion that, if the municipal authorities of the city of Helena had power to authorize the establishment of a telephone service for the use and convenience of the inhabitants thereof, and it was proper to use the streets for that purpose to the extent of placing necessary poles and wires therein, the plaintiffs not owning the fee in the street, would not be in a position to prevent such use on the ground that it was imposing an additional servitude upon an easement granted by them; for it does not appear from the allegations of the complaint that they, or their predecessors in interest, ever acquired the fee in the land occupied by the street. (1 High on Injunctions, § 637; Lewis' Eminent Domain, § 172; Mills on Eminent Domain, § 14.) It cannot be successfully questioned that the telephone is an appliance of great public utility to the inhabitants of towns and cities, and its use can be extended far beyond the limits of urban settlements. The use of this means of communication, as well as the telegraph, was considered of so much importance to the people, it was provided in the Constitution that "any association or corporation, or the lessees or managers thereof, organized for the purpose, or any individual, shall have the right to construct or maintain lines of telegraph or telephone within this State, and connect the same with other lines; and the legislative assembly shall,

by general law of uniform operation, provide reasonable regulations to give full effect to this section." (Art. xv. § 14.)

Is it germane to the proper use of streets to allow such poles to be set in and wires strung over them as are necessary to set in operation this service? Upon this question Mr. Justice Norton, speaking for the majority of the court, in the case of *Julia Bldg. Assoc.* v. *Bell Tel. Co.* 88 Mo. 269; 57 Am. Rep. 398, reasoned as follows: "If it be true, as laid down by the authorities herein cited, that when the public acquires the right to a street, either by dedication, grant, or condemnation, the municipality has the power to appropriate it, not only to such uses as are common and in vogue at the time of its acquisition, but also to such new uses as advanced civilization may suggest as conducive to the public good, the conclusion is inevitable that the use of Sixth Street in the manner and for the purposes proposed is allowable, for it cannot with any show of reason be denied that the means these appliances would afford for the instantaneous transmission of communications for the transaction of business, without resorting to the slower and common methods of bearing them, would be conducive to the public good, and make the street by these means serve one of the chief purposes for which it was dedicated."

As to the effect of the telephone in relieving the street of some portion of the throng which would otherwise pass over it, the same judge observes as follows: "These streets are required by the public to promote trade and facilitate communications in the daily transactions of business between the citizens of one part of the city with those of another, as well as to accommodate the public at large in these respects. If a citizen living or doing business on one end of Sixth Street wishes to communicate with a citizen living and doing business on the other end, or at any intermediate point, he is entitled to use the street, either on foot, on horseback, or in a carriage, or other vehicle, in bearing his message. The defendants in this case propose to use the street by making the telephone poles and wires the messenger to bear such communications instantaneously, and with more dispatch than any of the above methods, or any other known method of bearing oral communications. Not only would such communication be borne with more dispatch, but to the extent

of the number of communications daily transmitted by it, the street would be relieved of that number of · footmen, horses, or carriages."

In this view (and it seems to be very practical) the telephone pole would in fact facilitate passage upon the street, for it would constantly keep out of it a hundred or perhaps a thousand fold more of encumbrances than it brings in, by enabling persons to communicate without physically passing through the street to meet one another.

We think that to use the street in a reasonable manner, and to a reasonable extent, for this purpose, is just and proper, and is within the uses to which the street may lawfully be put, when such use is sanctioned by the public through its duly-authorized municipal agents. (*McCormick* v. *District of Columbia,* 4 Mackey, 396; 54 Am. Rep. 284; *Pierce* v. *Drew,* 136 Mass. 75; *Irwin* v. *Great Southern Tel. Co.* 37 La. An. 63; *Taggart* v. *Newport St. Ry. Co.* 16 R. I. 668; *People* v. *Kerr,* 27 N. Y. 188.)

Appellants contend that the city counsel possessed no power to grant said company the privilege mentioned, and that such attempted grant of said privilege was consequently void.   It is provided in the city charter (§ 44, p. 178, Sess. Laws, 1883, and § 44, p. 18, City Charter & Ordinances) that "the city council shall have power to license, tax, and regulate . . . . street railways, water companies . . . . electric light companies, telephone companies, gas companies, and all other branches of business."

The grant of this power, in our opinion, carried with it the necessary concomitants of its exercise; and that to license and regulate the telephone service, it was necessary to grant permission to use the appliances requisite thereto.   The Constitution of the United States provides that Congress "shall have power to regulate commerce with foreign nations, and among the several States, and with the Indian tribes."   Mr. Justice Field, expressing the opinion of the United States Supreme Court in the case of *Glouchester Ferry Co.* v. *Pennsylvania,* 114 U. S. 203, in referring to this "power to regulate," said: "The power also embraces within its control all the instrumentalities by which that commerce may be carried on, and the means by

which it may be aided and encouraged." (1 Dillon on Municipal Corporations, §§ 114, 357–360, and cases cited.)

Appellants alleged in their complaint that respondent, a corporation organized under the laws of the Territory of Utah, and doing business in this State, has failed to comply with the laws of this State, as prescribed in chapter xxiv., page 720, division 5 of the Compiled Statutes, entitled "Foreign Corporations," in that it has not filed in the office of the county clerk and recorder of Lewis and Clarke County a duly authenticated copy of its charter, or certificate of incorporation. A forfeiture to the people of Montana of ten dollars for every day it shall so neglect to file such authenticated certificate or charter of its incorporation, and that all acts and contracts made by such corporation during such neglect shall be void and invalid as to the corporation, are penalties prescribed by said statute against corporations for non-compliance with the provisions thereof. It is evident, however, that appellants cannot enforce or avail themselves of those penalties, or any of them, in an action, until they have alleged facts sufficient to constitute a cause of action against said corporation. (*King* v. *Exploring Co.* 4 Mont. 1.) The judgment of the court below will therefore be affirmed.

*Affirmed.*

BLAKE, C. J., and DE WITT, J., concur.