No. 12020

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

HARRY A. BOLINGER, JR.,
Executor of the Last Will and Testament
of Mary E. Bolinger, Deceased and
Lucille B. Wood,

Plaintiffs and Appellants,

-vs-

CITY OF BOZEMAN, a Municipal Corporation
of the State of Montana, et al.,

Defendants and Respondents.

---

Appeal from:  District Court of the Eighteenth Judicial District,
Honorable Victor H. Fall, Judge presiding.

Counsel of Record:

For Appellants:

Bolinger and Wellcome, Bozeman, Montana.
H. A. Bolinger argued, Bozeman, Montana.

For Respondents:

Berg, O'Connell, Angel and Andriolo, Bozeman, Montana.
Ben E. Berg argued, Bozeman, Montana.

---

Submitted:  January 10, 1972

Decided: FEB 9 - 1972

Filed:  FEB 9 - 1972

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment entered by the district court in Gallatin County, Hon. Victor H. Fall presiding. The case was tried by the court without a jury and judgment was entered pursuant to findings of fact and conclusions of law, in favor of defendant. Plaintiff, Harry A. Bolinger, Jr., executor of the last will and testament of Mary E. Bolinger, deceased, filed exceptions to the findings and a motion to amend and make additional findings. The exceptions and motion were not ruled upon within the permissible time period, thereupon, the exceptions and motion being deemed denied, plaintiff perfected this appeal from the judgment.

This Court rendered an opinion on October 4, 1971, subsequently by order granted a limited rehearing, limited as to the disposition on reversal of the judgment; reheard that limited matter; and subsequently by order dated December 6, 1971, withdrew its original opinion and granted a full rehearing. The matter was reheard on January 10, 1972.

The case involves a county road in Gallatin County designated as county road No. 61, which runs in a north-south direction in close proximity to the city limits of the city of Bozeman. The property through which the road runs is not contiguous to the city, so as to permit an application for annexation under existing statutes.

In March 1969, the city of Bozeman obtained an "Encroachment Application and Permit" from Gallatin County to " * * * construct, install, operate and maintain a sanitary sewer line together with necessary appurtenances thereto, on and within the

right of way of the County Road Number Sixty (61)" (sic). This permit is expressly authorized by section 16-1114, R.C.M. 1947.

In the district court there were two plaintiffs, Bolinger and a neighboring property owner, Lucille B. Wood. These plaintiffs own the fee of a portion of lands over which county road No. 61 runs; but the instant appeal is taken only by Harry A. Bolinger, Jr., as executor of the last will and testament of Mary E. Bolinger.

The road in question was established March 7, 1891, by the board of county commissioners of Gallatin County upon petition of residents in the area traversed by the road. At the time of the filing of plaintiffs' complaint the road was neither graded nor surfaced.

Defendants were advised of the plaintiffs' objections to the sewer prior to undertaking the digging of the sewer line in county road No. 61 across plaintiffs' property. Plaintiffs' objections were based upon the fact that defendants had no easement or right of way agreement and for this reason could not encroach upon the fee interest of the plaintiffs. Defendant city of Bozeman had advised plaintiffs that they could not attach to the sewer when it was completed, since their property was not within the city limits.

Defendant, city of Bozeman, proceeded with and completed the construction of the sewer in spite of the intervention of this suit seeking a mandatory injunction to compel the removal of any pipe which had been placed at that time and to enjoin the trespass by defendants. Following completion of the sewer line

the case was tried and the district court found that defendants had a right to lay a sewer line under the right of way of county road No. 61 by virtue of the encroachment permit from Gallatin County.

Appellant poses the question here as—what right does Gallatin County possess in the fee underlying county road No. 61, which might be assigned to the city of Bozeman for a sewer system?

Respondent poses the question here as—may a municipal sewer be installed in a public road by permission of the county without consent of the adjoining property owners?

Subsidiary to both questions posed are these inquiries: What is the nature and extent of a public easement in a highway? That is, insofar as the sewer line here is concerned, is the public easement restricted to the use of a roadway for the movement of vehicular traffic only?

Clearly, and we think it needs no citation of authority to support, the governing authority can regulate use of the easement. Here, this governing body, the Board of County Commissioners, has statutory authority to issue the permit and did so. So the question really is, whether the rights of the fee owner have been invaded.

The district court in its finding of fact No. II, found:

"That Gallatin County Road No. 61 is a public road created by order of the Board of County Commissioners on March 7, 1891 * * *."

The fact that appellant's predecessor was one of fifteen "householders" who petitioned the county for a county road, which is the subject matter of this suit, is not in dispute and is

- 4 -

supported by the record, as is the granting of the petition by the county.

In 1891 Montana had no statute governing dedication of privately owned lands to the public. Hence, the recording of a grant constituted a common-law dedication. City of Billings v. Pierce Co., 117 Mont. 255, 161 P.2d 636. By a common-law dedication the interest vested in the public is an easement. 23 Am Jur 2d, Dedication, § 57. The grant of an easement is the grant of a use and not a grant of title to the land. 28 C.J.S. Easements § 28, p. 682.

Appellant approaches the problem by distinguishing between city streets and rural or county roads insofar as there is a differentiation in rights of the public as follows.

The present section pertaining to county roads is section 32-4001, R.C.M. 1947, which provides as follows:

"Rights of way for county roads * * *

"(2) By taking or accepting interests in real property for county roads, the public acquires only the right of way and the incidents necessary to enjoying and maintaining it." (Emphasis supplied)

The foregoing section was enacted as part of the revised highway laws of 1965. Prior to the recodification of this law, the section appeared as section 32-107, R.C.M. 1947, and provided as follows:

"Rights acquired by public in highway. By taking or accepting land for a highway, the public acquires only the right of way and the incidents necessary to enjoying and maintaining the same, subject to the regulations in this act and code provided."

The section was originally enacted as section 2620 of the 1895 Political Code in almost the identical language.

The Montana code provision was adopted from the California code which had contained a similar section since 1883. The California Code at the time of the adoption of the same provision by the Montana legislature, provided as follows:

"Section 2631, California Political Code.

"By taking or accepting land for a highway, the public acquire only the right of way, and the incidents necessary to enjoying and maintaining the same, subject to the regulations in this and the Civil Code provided."

As opposed to the clear-cut legislation indicating that the county only acquires a right of way over lands where a county road is laid out or dedicated, the city of Bozeman obtained a fee interest in its streets by virtue of section 11-3304, R.C.M. 1947, which provides as follows:

"The map or plat recorded under the provisions of the foregoing act shall thereupon be sufficient conveyance to vest in the municipality the fee of the parcel of land designated or intended for streets, alleys, ways, commons, or other public uses, to be held in the corporate name in trust to and for the uses and purposes in the instrument set forth, expressed, designated, or intended." (Emphasis supplied)

The use to which streets may be placed is much broader than the use to which county highways may be placed, particularly in view of the fee interest which a city obtains, and also in view of the fact that the owners of property in the city are benefited by the various instrumentalities which utilize the street for conducting their operations.

In California the sections pertaining to county roads, which we have set forth hereinabove, have received extensive interpretation throughout the years. Prior to the adoption of the Montana statute, the California Supreme Court had considered the

- 6 -

applicable California section in McRose v. Bottyer, 81 Cal. 122, 22 P. 393, 394, (Decided October 11, 1889), where that court stated as follows:

> "'By taking or accepting land for a highway, the public acquire only the right of way, and the incidents necessary to enjoying and maintaining the same, subject to the regulations in this and the Civil Code provided.' Pol.Code, §2631. 'The extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired,' (Civil Code, §806;) and is extinguished, 'when the servitude was acquired by enjoyment, by the disuse thereof by the owner of the servitude for the period prescribed for acquiring title by enjoyment,' (Id.§811.) These provisions are part of chapter 3, pt.2, tit.2, of the Civil Code, which relates to private easements and servitudes; but they are made applicable to a public easement of the character in question by section 2631 of the Political Code, supra * * *."

The same holding was followed in Smith v. City of San Luis Obispo, 95 Cal. 463, 30 P. 591, 593.

Thus, from the foregoing discussion of appellant's view of a distinction between urban and rural streets, appellant urges that an easement is limited to "only the right of way and the incidents necessary to enjoying and maintaining the same * * *." This, appellant urges, does not include granting permission to a city to lay a sewer line.

Appellant cites 26 Am Jur 2d, Eminent Domain, § 225, as follows:

> " * * * In states in which a distinction between urban and rural servitudes is recognized, it is uniformly held that a pipeline for the conveyance of natural gas cannot be laid beneath the surface of a country road without compensation to the owners of the fee. A like rule is applied with respect to a water main. The laying of water mains in a country highway to furnish connection with other pipes, and not to supply

> the residents upon the highway with water,
> is an additional servitude, although the lo-
> cation is adjacent to a well-settled commun-
> ity. * * *"

However, that same section cites cases to the contrary. The mere distinction between city and rural roads does not, in our view, answer the question of whether the rights of the fee owners have been invaded.

Much litigation has arisen over the years concerning the use of public right of ways for utility purposes. Most of the earlier cases were challenges by abutting landowners to the utilities' right to locate their facilities in the public way, but the later cases have concerned the use of public funds to relocate utility lines in the construction of interstate highways, where the utilities' initial right to use the highway was again reviewed. In this respect, Montana's legal history has paralleled that of other states. Although the recent decisions are not uniform, they are generally distinguishable by reference back to the policy established in the early decisions.

Perhaps the leading early case in the west is Cater v. Northwestern Tel. Exch. Co., 60 Minn. 539, 63 N.W. 111, 112, which involved the construction of a telephone line between the cities of Minneapolis and St. Cloud along a rural highway, the fee of which, subject to the public easement, belonged to the plaintiff, an abutting landowner. The line was built without his consent, but pursuant to a statute which granted to utilities the right to use public highways for the purpose of erecting transmission lines provided their installation did not interfere with ordinary travel on the road. As the court put it, the plaintiff "plants himself

- 8 -

squarely upon the proposition that the erection and maintenance

of telephone poles and wires is not within the public easement

in a highway, but constitutes the imposition of an additional

servitude upon his land". Similarly, the court framed the ques-

tion in this language: "[W]hat is the nature and extent of the

public easement in a highway?" It was to this question that the

Minnesota court addressed itself, saying:

> "If there is any one fact established in the
> history of society and of the law itself, it
> is that the mode of exercising this easement
> is expansive, developing and growing as civil-
> ization advances. * * * Hence it has become
> settled law that the easement is not limited
> to the particular methods of use in vogue when
> the easement was acquired, but includes all new
> and improved methods, the utility and general
> convenience of which may afterwards be discover-
> ed and developed in aid of the general purpose
> for which highways are designed. * * * Another
> proposition, which we believe to be sound, is
> that the public easement in a highway is not
> limited to travel or transportation of persons
> or property in movable vehicles. * * * But it
> is now universally conceded that urban highways
> may be used for constructing sewers and laying
> pipes for the transmission of gas, water, and
> the like for public use. * * * The uses refer-
> red to of urban streets are not in aid of travel,
> but are themselves independent and primary uses,
> although all within the general purpose for
> which highways are designed. Neither can a dis-
> tinction between urban and rural ways be sustain-
> ed on the ground that such uses were contemplated
> when the public easement was acquired in the
> former, but not when the easement was acquired
> in the latter. As a matter of fact, most of
> these uses were unknown when the public easement
> was acquired in many of the streets in the older
> cities. Indeed, many of what are now urban
> highways were merely country roads when the
> public acquired its easement in them, and doubt-
> less many highways that are now merely country
> roads will in time become urban streets. When
> such changes occur, will the abutting owners
> be entitled to new compensation before the
> public can build sewers or lay water or gas

pipes in these streets?

> "It seems to us that a limitation of the
> public easement in highways to travel and
> the transportation of persons and property
> in movable vehicles is too narrow.  In our
> judgment, public highways whether urban or
> rural, are designed as avenues of communi-
> cation; and, if the original conception
> of a highway was limited to travel and
> transportation of property in movable vehicles,
> it was because these were the only modes of
> communication then known; that as a civili-
> zation advanced, and new and improved methods
> of communication and transportation were devel-
> oped, these are all in aid of and within the
> general purpose for which highways are designed.
> Whether it be travel, the transportation of
> persons and property, or the transmission of
> intelligence, and whether accomplished by old
> methods or by new ones, they are all included
> within the public 'highway easement,' and im-
> pose no additional servitude on the land,
> provided they are not inconsistent with the
> reasonably safe and practical use of the high-
> way in other and usual and necessary modes,
> and provided they do not unreasonably impair
> the special easements of abutting owners in
> the street for purposes of access, light,
> and air."  (Emphasis supplied.)

Montana in its early cases adopted a similar concept of

the extent and nature of a public easement.  For example, in

Hershfield v. Rocky Mt. B. T. Co., 12 Mont. 102, 118, 29 P. 883,

where the plaintiff, a property owner on Helena's Main Street,

attempted to enjoin the erection of a telephone pole in front of

his property, the court denied the injunction, saying:

> "We think that to use the street in a reason-
> able manner, and to a reasonable extent, for
> this purpose, is just and proper, and is with-
> in the uses to which the street may lawfully
> be put, when such use is sanctioned by the
> public through its duly-authorized municipal
> agents."

The Montana Supreme Court does not always distinguish

between urban and rural easements.  Thus, in Howard v. Flathead

Independent Tel. Co., 49 Mont. 197, 141 P. 153, it was held that

a guy wire to support a telephone pole in a rural road was not a trespass on the public right of way. This was a negligence case.

In Kipp v. Davis-Daly Copper Co., 41 Mont. 509, 516-518, 110 P. 237, which involved the installation of railroad tracks on Mercury Street in Butte for rail transportation of ore, this Court in sustaining that use of the public street, adopted and embellished the same ideas promulgated by the Minnesota court in Cater:

> "But it is not important to inquire where the fee is vested. The respective rights of the abutting owner and the public are dependent upon the fact of dedication. In view of these provisions as well as of the rule of law recognized everywhere, the authorities which control streets and highways may use or permit the use of them in any manner or for any purpose which is reasonably incident to the appropriation of them to public travel and to the ordinary uses of streets or highways under the different conditions which arise from time to time. (White v. Blanchard Bros. Granite Co., 178 Mass. 363, 59 N.E. 1025.) For a highway is created for the use of the public, not only in view of its necessities and requirements as they exist, but also in view of the constantly changing modes and conditions of travel and transportation, brought about by improved methods and required by the increase of population and the expansion in volume of traffic due to the ever-increasing needs of society. Were this not so, any change in these respects would require a readjustment of rights as between the public and the abutting property owner, because the result of it would of necessity be held an imposition of a new burden upon the highway, and hence upon the property of the abutting owner. For these changing public uses the owner must be presumed to have received compensation when the highway was created. * * *

> "It is often difficult to determine whether a new use is such an invasion of the rights of an abutting owner as entitles him to damages

- 11 -

within the meaning of the limitation. If it is, compensation must be made before the use is installed. But it must be borne in mind that the way was created for all uses to which it might reasonably be put in view of improved methods and the increasing needs of the public; and the limitation is to be given a construction which will not defeat this original purpose. And if the particular use to which consent has been given by the municipal authorities is in the nature of a public use, and is not more burdensome than other public uses which have been held to be within possible contemplation at the time the way was created, it is not a taking or damaging of the rights of the owner, within the purview of the limitation." (Emphasis supplied.)

As indicated, recently the courts have had occasion to review the principles announced in these early cases. This has been true in Montana as elsewhere. Thus, in Jones v. Burns, 138 Mont. 268, 287, 357 P.2d 22, this Court was asked to decide the constitutionality of a statute authorizing the State Highway Commission to participate in the cost of relocating utility lines in public roads including privately owned gas lines. In reviewing the decisions of other states, the Court noted that only Idaho and Maine, with similar constitutional provisions, had declared such statutes unconstitutional. To distinguish the Idaho decision, the Court compared the policy of the Idaho court with the early decisions in Minnesota, especially the holding in Cater:

> "There is further reason why this court should not follow the decision of the Idaho court, but rather the decision of the Minnesota court. This is based on the fact that Idaho has a different policy than Montana or Minnesota on what is to be regarded as a primary and proper use for which highways are designed.
>
> "In Minneapolis Gas Co. v. Zimmerman, supra, 253 Minn. 164, 91 N.W.2d 642, 649, the Minnesota court, after quoting the following from Cater v. Northwestern Tel. Exch. Co., 60 Minn.

- 12 -

539, 63 N.W. 111, 112, 28 L.R.A. 310:

"'" * * * the public easement in a highway
is not limited to travel or transportation
of persons or property in movable vehicles.
* * * But it is now universally conceded that
urban highways may be used for constructing
sewers and laying pipes for the transmission
of gas, water, and the like for public use.
* * * The uses referred to of urban streets
are not in aid of travel, but are themselves
independent and primary uses, although all
within the general purpose for which highways
are designed. Neither can a distinction be-
tween urban and rural ways be sustained. * * *",
stated at page 649 of 91 N.W.2d:

"'Clearly since the Cater decision in 1895,
Minnesota has been definitely committed to
the view that the use of rights-of-way by
utilities for locating their facilities is
one of the proper and primary purposes for
which highways are designed even though their
principal use is for travel and the transpor-
tation of persons and property.'

"Such use of the streets and highways is
conducive to the public welfare and serves
one of the purposes for which they are dedi-
cated.

"In Hershfield v. Rocky Mt. B. T. Co., 12
Mont. 102, at page 118, 29 Pac. 883, at page
887, this court also committed itself to this
view when it stated 'We think that to use the
street in a reasonable manner, and to a reason-
able extent, for this purpose [placing telephone
poles and lines along the streets] is just and
proper, and is within the uses to which the
street may lawfully be put, when such use is
sanctioned by the public through its duly-
authorized municipal agents.'

"In State ex rel. Rich v. Idaho Power Company,
81 Idaho 487, 346 P.2d 596, the Idaho court
expressly held that it was not committed to this
view." (Emphasis supplied.)

It is also worth noting the course of recent cases in

New Mexico where the Supreme Court in State Highway Com'n. v.

Southern Union Gas Co., 65 N.M. 84, 332 P.2d 1010, 1016, first

held its Utility Relocation Financing statute unconstitutional

- 13 -

and in distinguishing the Minnesota cases, said:

> "It might be explained that Minnesota is committed to the view, as stated at page 649 of 91 N.W.2d:
>
> "' * * * the use of rights-of-way by utilities for locating their facilities is one of the proper and primary purposes for which highways are designed.' [Emphasis ours.]
>
> "Needless to say, such has never been the policy of New Mexico."

But, in the later case of State v. Lavender, 69 N.M. 220, 365 P.2d 652, 661, upon reflection and reconsideration the New Mexico court reversed itself, saying:

> "The statement in Southern Union that New Mexico has never recognized that one of the primary purposes for which highways are designed is for location of utility facilities, was made in order to distinguish the leading contrary case, Minneapolis Gas Company v. Zimmerman, 1958, 253 Minn. 164, 91 N.W.2d 642. Actually, the statement is erroneous when it is considered there has been unquestioned statutory authority for such use of highway rights-of-way for more than fifty years. * * * The Minnesota decision was soundly based on a prior decision of that court in Cater v. Northwestern Tel. Exch. Co., 60 Minn. 539, 63 N.W. 111, 28 L.R.A. 310, which held that the use of highway easements for utility services was within the general purpose for which highways are designed, in addition to their use for transportation of movable vehicles. We agree. To hold otherwise would be to ignore the practical, as well as the legal, aspects of the situation."

Furthermore, the courts of California, appellant's citations to the contrary notwithstanding, agree with Minnesota, New Mexico, and Montana as to the extent and nature of the public easement in a dedicated public road. In Collopy v. United Railroads of San Francisco, 67 C.A. 716, 228 P. 59, 61, the court approvingly cites Cater:

- 14 -

"As civilization advances and new and improved methods of transportation are developed, these are in aid of and within the general purposes for which highways are designed. Cater v. Northwestern, etc., 60 Minn. 539, 63 N.W. 111, 28 L.R.A. 310, 51 Am. St. Rep. 543. An abutting owner, therefore, is not entitled to be compensated anew for every improvement in street or vehicle, or with every change made imperative by such improvement, and especially so where he has made a conveyance in full contemplation and knowledge of such change. Such in effect is the principle established in Montgomery v. Railway Co., 104 Cal. 186, 37 Pac. 786, 25 L.R.A. 654, 43 Am. St. Rep. 89, and Hayes v. Handley, 182 Cal. 273, 187 Pac. 952. See, also, Albany v. United States, etc., 38 Cal. App. 466, 176 Pac. 705.

"Where land is conveyed for a public highway the implication must be that it will be used as the convenience and welfare of the public may demand, although that demand may be augmented by the increase of population. The benefits which an owner of the servient estate receives from the increase in population and consequent building up of the community usually far more than compensate him for the increased burden he may claim to have suffered." (Emphasis supplied.)

In Watson v. Eldridge, 207 Cal. 314, 278 P. 236, 238, the question was whether the canals of Venice, California, could be filled and converted to surface highways without compensation to abutting landowners. Holding that this change of use was justified, the Supreme Court of California said:

"The real question always is, therefore, whether the use in a particular case, and for a designated purpose is, consistent or inconsistent with such primary object. Whether or not a particular use amounts to a diversion from that for which the dedication was made depends on the circumstances of the dedication and the intention of the party making it. It has been held that such use is authorized as is fairly within the terms of the dedication and reasonably serves to fit the property for enjoyment by the public in the manner contemplated. [Citing cases.] In other words, the dedicator

- 15 -

> is presumed to have intended the property
> to be used in such way by the public as will
> be most convenient and comfortable and accord-
> ing to not only the properties and usages
> known at the time of the dedication but also
> to those justified by lapse of time and change
> of conditions." (Emphasis supplied.)

See also Airways Water Co. v. Los Angeles County, 106 C.A.2d 787, 236 P.2d 199; State v. Board of Com'rs of Walla Walla County, 28 Wash.2d 891, 184 P.2d 577, 172 ALR 1001.

Finally, appellant's argument that the public easement in a rural county road is so much different and more limited than an easement in a city street is also disposed of by the Supreme Court of Oregon in Huddleston v. City of Eugene, 34 Ore. 343, 55 P. 868, 871, where that court said:

> "It is argued that the uses to which streets
> are ordinarily put are greater and more numerous
> than those to which a county road is subjected,
> and particularly so with reference to the lay-
> ing of pipes and the construction of drains,
> sewers, and culverts in streets. 2 Dill Mun.
> Corp. § 688. But Judge Elliott, in his work on
> Roads and Streets (page 311), anticipating such
> contention, says: 'Where land is dedicated or
> appropriated for a suburban road, the implica-
> tion must be that it shall be used as the con-
> venience and welfare of the public may demand,
> although that demand may be augmented by the
> increase in population, or by a town or city
> springing up in the territory traversed by the
> road.'"

Appellant would distinguish most of the foregoing analysis on two points: First, that in Cater the Court assumed that the telephone line there involved was for the use of the public upon payment of certain charges. This assumption, appellant urges, distinguishes that case and those based on that rationale from the instant case, because appellant is not allowed to hook onto the sewer. Second, that in most of the cases involved there were

statutory dedications while here we are dealing with what we
have heretofore described as a common law dedication (being prior
to statutory authority). We hold that neither of these distinc-
tions, if they be that, are sufficient to remove this case from
the rationale expressed heretofore.

Accordingly, we affirm the judgment. However, in consider-
ing costs on this appeal, much of the additional costs we find
were brought about by the respondent from the inception of the
sewer project. We have not developed the facts and circumstances
showing this, in this opinion. We do assess costs under Rule 33,
Montana Rules of Appellate Civil Procedure, against respondent.

_Wesley Castles_
Associate Justice

We concur:

_James T. Harrison_
Chief Justice

_John Conway Harrison_

_Frank I. Haswell_

_Gene B. Daly_
Associate Justices