Addison,
January,
1839.

PANTON TURNPIKE COMPANY *v.* PUTNAM BISHOP.

Turnpike inspectors, whose appointment is shown, and who have acted as such, will be presumed to have taken the appropriate oath.

The legislature have the power to grant to turnpike corporations the right to build a road over an existing highway, and maintain the same by tolls.

Whether, in any particular instance, such a grant has been made, is a question of intention, to be ascertained by the general rules of construction applicable to statutes of a similar character.

Where, by the act of incorporation, a committee is appointed to locate the road, and they establish it upon a pre-existing highway, this is equivalent to an express grant to that effect.

So a grant of this character may be presumed from long and uninterrupted enjoyment.

Individuals, or the inhabitants of a particular district, who have for a long time been permitted to pass a turnpike gate, toll-free, may prescribe for a right so to pass, but if denied this right by the corporation, they must seek private redress.

For, when this right to pass, toll-free, by prescription, extended to all the inhabitants of a town through which a turnpike road passed, this created no right in the town, in a corporate capacity; and where the right was denied by the turnpike company, it was holden that the town could not be justified in demolishing the company's gate, as a public nuisance.

And where the selectmen of a town had, by virtue of a vote of the town, proceeded so to do, it was holden, that they could not afterwards justify their proceedings under a private right to pass the gate toll-free.

TRESPASS for cutting down and removing plaintiff's gate on their turnpike road in Panton, leading from Ferris' ferry, in Panton, to the main road in Vergennes, &c. The defendant pleaded the general issue, and a special plea in bar, that the road in question was a common highway, and that he, as a citizen of this state, and as one of the selectmen of said Panton, and in pursuance of a vote of instructions of said town, cut down and removed said gate, &c.

The plaintiffs replied, setting forth the act of the legislature, incorporating them with full powers to lay out their turnpike road where the same was laid, and that said road was duly and legally surveyed, laid out, and made to the acceptance of the turnpike inspectors, and that the gate in question was erected by the plaintiffs by authority of the provisions of that act.

The defendant rejoined, that the plaintiffs had never complied with the provisions of said act of incorporation, nor built such a turnpike road as said act required.

The plaintiffs took issue upon the defendant's rejoinder.

On the trial in the county court, the plaintiffs showed the act of the legislature, authorizing them to survey out and make a turnpike road from Vergennes through Panton towards lake Champlain; the records of the company showing the organization under said act, and a survey of the road, locating it where the trespass was committed. They also showed a certificate signed by the then turnpike inspectors, dated September 15, 1817, accepting said road.

ADDISON,
January,
1839.

Panton Turn-
pike Co.
v.
Bishop.

This was objected to by the defendant, on the ground that the inspectors were not sworn, as required by the 1st section of the act directing the appointment of turnpike inspectors, which objection was overruled by the court. The plaintiffs then proved that the gate in question was taken down and removed to the side of the road by the defendant and others.

The defendant then offered testimony to show, that previously to the year 1805, the whole of this road, as it had been used and travelled from that time to this, had been surveyed and opened as a public highway by the selectmen of Panton; that the road had been made and worked by the inhabitants of Panton, at a great expense; that the ordinary highway taxes and one land tax, granted by the legislature on said town of Panton, had been laid out on this road, and that it was a highway on which the public travel passed and repassed, all which was previous to plaintiffs' survey; and that the said plaintiffs laid out their labor and erected their gate on this old highway, in pursuance of their said survey; that the plaintiffs had not, until a short time before the commencement of this suit, collected toll of the inhabitants of Panton, for passing upon said road with their teams; and that, upon a claim of toll being made, by said plaintiffs, of the inhabitants of said Panton, the claim was resisted, and the town, by a legal vote, in town meeting, instructed their selectmen to remove all obstructions and nuisances in the public highways; and that the defendant, who was one of the selectmen of said Panton, in obedience to those instructions, removed the gate in question, which stood in the public highway aforesaid, as laid, opened and worked by said town of Panton, previously to the act incorporating said turnpike company.

To the admission of this testimony the plaintiff objected, and it was excluded by the court, and a verdict taken for the plaintiffs. To all which the defendant excepted.

ADDISON,
January,
1839.

Panton Turn-
pike Co.
v.
Bishop.

*H. Seymour* and *P. C. Tucker*, for defendant.

1. The plaintiffs had no right to lay their road upon a highway already laid out and worked by the town of Panton, without first making compensation to the town. 2 Mass. R. 143.

2. The evidence offered by the defendant should have been permitted to go to the jury, because it tended to prove that if the consent of the town was ever given to the act of the turnpike company in laying their road upon the old highway, it was upon the condition, and with the understanding, that if the turnpike company had the benefit of the old highway, the inhabitants of Panton should have the privilege of the road, without the payment of toll.

If the evidence produced by the plaintiff showed that the town, for a great length of time, acquiesced in the claim of the plaintiffs to keep up gates on this road, so the testimony of the defendant would, if admitted, prove that the turnpike company, for the same length of time, acquiesced in the claim of the inhabitants of Panton to pass and repass upon said road without the payment of toll.

The plaintiffs were permitted to keep up their gate so long as they permitted the inhabitants of Panton to travel the road without paying toll, and no longer. *Wadhams* v. *Litchfield and Canaan Turnpike Company,* 10 Conn. R. 416.

This being the limit and condition of their right, when the company refused to permit the inhabitants of Panton to travel this road without paying toll, their right to keep gates on the road ceased, so far as it depended on the assent or permission of the town of Panton, and the road became as it formerly was, as to the inhabitants of Panton, a public highway, from which they might remove any obstructions placed on it to prevent their passing and repassing. 2 Vt. R. 512. 1 Aik. R. 264.

The defendant also contends, that the acceptance of the turnpike inspectors of the road, as a turnpike, was illegal, unless it is shown that they were sworn. Stat. 479, 480.

*E. D. Woodbridge* and *J. Pierpoint,* for plaintiffs.

1. Turnpike inspectors are public officers of the government. Stat. 479.

"Officers duly appointed and commissioned are presumed to have taken the regular oaths." *Adams* v. *Jackson,* 2, Aik. R. 146.

ADDISON,
January,
1839.

Panton Turn-
pike Co.
v.
Bishop.

Public highways are laid out by virtue of authority derived from the laws of the state, and when laid out and opened become, for the purposes for which they were laid out, the property of the state, and are under the direct control of its legislature. This control the legislature has always exercised in this state.

If a committee appointed by the legislature to lay out a turnpike or any other road, in the discharge of the duty imposed upon them, and acting within the scope of the authority given them by the act creating them, lay out such turnpike or other road on a highway previously laid, it operates, so far, as a discontinuance of such previous highway. This doctrine was recognized in the case of the *Searsburgh Turnpike Company* v. *Cutler*, 6 Vt. R. 324, as having been frequently discussed and fully settled in this state.

The opinion of the court was delivered by

REDFIELD, J.—The question made in regard to the want of evidence of the turnpike inspectors being sworn, cannot avail. All officers, having general duties assigned them by the statute, if shown to have acted, and to have been recognized as such, are presumed to have been regularly appointed, commissioned and sworn. And even special officers, whose appointment is shown, and who have assumed the functions of the appointment—*e. g.* auditors in actions of account—will be presumed to have taken the appropriate oath. *Putnam* v. *Dutton*, 8 Vt. R. 396.

In regard to the right of the plaintiffs to keep up a gate upon what was originally the public highway, previously to their act of incorporation, the court have not been able to perceive any good ground to doubt. Whether a turnpike company would be justified in surveying their road along a previously existing highway, so as to supersede and thus discontinue such highway, must depend upon the intention of the legislature, to be ascertained in the same manner that intention is reached in relation to other statutes. There can be no doubt of the power of the legislature to make a valid grant to that effect. The town or its inhabitants have no more interest in the highways within its limits, than any other citizens. The public highways throughout the state are of general concern, and, as such, must of necessity be perpet-

ADDISON,
*January,*
1839.

Panton Turn-
pike Co.
*v.*
Bishop.

ually under the control of the legislature, unless granted to individuals or private corporations. The legislature may as well provide for sustaining an existing highway, by means of tolls, as for the building and sustaining of new highways.— The only question in regard to such a grant, is one of intention. Did the legislature intend to grant to the plaintiffs the right to locate their road upon an existing highway?

The court think, that the act of incorporation having appointed a committee to locate the road, and that committee having fixed it upon the old highway, is equivalent to an express provision in the act to that effect.

If it were not for this, the fact that the plaintiffs have been permitted, for more than twenty years, to enjoy the right without molestation, would be equivalent to an express grant, and would preclude any interference on the part of the town. Indeed, under special circumstances, the dedication of private property to public use, or the abandonment of a right to use such property by the public, and its surrender to private use, will be presumed in a much less time than the usual term of prescription.

The fact that the inhabitants of Panton had all along been permitted to pass the plaintiffs' gate, toll-free, presents no obstacle to the plaintiffs' acquiring an exclusive right to use the old highway in the manner claimed. This would, at most, give the inhabitants of that town a prescriptive right to pass the plaintiffs' gate, toll-free. If this right were denied any or all the inhabitants, it would give no right to the town to interfere, in its corporate capacity, and demolish the plaintiffs' gate, by way of abating a nuisance. Any citizen, denied permission to pass as he had been accustomed to do, might, perhaps, be justified in passing forcibly, but he could, at most, only use such force as was necessary for that purpose. He could not demolish the gate to-day, because he expected some citizen of the town would wish to pass to-morrow, even although the plaintiffs insisted they should not permit such citizen to pass; nor could the selectmen of the town do the same for the same purpose, any more than one who had been permitted to pass the gate could return and destroy it, lest it might afterwards be shut against some one

having equal right to pass. *Pingry* v. *Washburn*, 1 Aikens' R. 264.

ADDISON,
January,
1839.

Panton Turn-
pike Co.
v.
Bishop

And it is equally well settled, that one, who claims to do an act in one right, shall not afterwards be permitted to refer the act to another right, and for a different object. The defendant, who claimed to demolish the plaintiffs' gate as a public nuisance, by virtue of his authority as selectman, under a vote of the town of Panton, cannot, now that he appears to have acted in such capacity, wholly without justification, be permitted to justify his conduct, as an inhabitant of Panton for the purpose of passing the plaintiffs' gate. Judgment of the county court affirmed.

NATHAN D. SHERWOOD *v.* JOSEPH FRANCIS.

F. executed his note to H. payable to his order, which was indorsed to S.
and notice given to the maker. Before notice of such indorsement, F.
signed a note, with H., as his surety to B., and which F. had agreed to
pay prior to notice, but which he did not pay till after notice.

Held that such payment by F. did not constitute such a claim against H.,
the original payee, as to enable F. to offset it against S., the indorsee,
under the statute of 1793.

*E. D. Woodbridge* and *P. C. Tucker*, for plaintiff.

*C. Linsley*, for defendant.