Argued 14 December, 1898; decided 23 January, 1899.

**HUDDLESTON *v.* CITY OF EUGENE.**

[43 L. R. A. 444; 55 Pac. 868.]

</div>

1. Title to Land in Public Streets.†—In view of Section 4184, Hill's Ann. Laws, providing that when a street is vacated the land theretofore so used shall vest in the abutting owners, the public has only an easement in such land: *McQuaid* v. *Portland, etc. Ry. Co.*, 18 Or. 237 and *Larkin* v. *Terwilliger*, 22 Or. 97, cited.

2. Changing Roads into Streets—Additional Servitude.*—The conversion of a county road into a city street does not impose an additional servitude on the land occupied by the road, requiring additional compensation to be made to the owner of the fee, under the State Constitution, Article I, § 18, prohibiting the taking of private property for public use except on payment of a just compensation to the owner.

---

†Note.—On this subject see *note* to *Chicago, etc. Ry. Co.* v. *Milwaukee, etc. Ry. Co.*, 60 Am. St. Rep., p. 142 (37 L. R. A. 856); *People* v. *Foss*, 20 Am. St. Rep. 537.

*See the following cases on the question What Use of a Street or Highway Constitutes an Additional Servitude for which Compensation must be made.

City Street Railways.—*State ex rel.* v. *Trenton Pass. Ry. Co.*, 3 L. R. A. 129; *Taggart* v. *Newport St. Ry. Co.*, 7 L. R. A. 205; *East End Ry. Co.* v. *Doyle*, 9 L. R. A. 100, 17 Am. St. Rep. 933; *Koch* v. *North Avenue R. R. Co.*, 15 L. R. A. 377;

3. PIPES AND SEWERS NOT A NEW SERVITUDE.—The use of a street for laying pipes, and constructing drains, sewers, and culverts, does not impose an additional servitude on the land, so as to prevent the conversion of a public road into a city street without additional compensation to the owner of the fee.

4. STREET IMPROVEMENT NOT A NEW SERVITUDE.—The fact that adjacent property is liable to assessment for maintaining and improving the street does not constitute an additional servitude for which additional compensation must be made as a condition of changing a country road into a city street.

5. EMINENT DOMAIN.—Prescribed proceedings for condemning private property for public use must always be strictly pursued.

6. CHARTER OF EUGENE.—Sections 90 and 98 of the charter of the City of Eugene (Laws, 1889, p. 273), construed.

From Lane :   J. C. FULLERTON, Judge.

This is a suit by S. A., Huddleston, to enjoin the Marshal of the City of Eugene from selling certain real property to satisfy an assessment for an alleged street improvement. The material facts are that plaintiff, as executrix of the last will and testament of James Huddleston, deceased, is entitled to the possession of a tract of agricultural land, upon the north side of which ,the County Court of Lane County located and constructed a county road ; that subsequent to the establishment of said road the legislative assembly passed an act incorporating the City of Eugene, whereby said premises were

*Note* in 17 L. R. A. p. 477; *Gans Mfg. Co.* v. *St. Louis, etc. R. R. Co.*, 18 L. R. A. 339, 35 Am. St. Rep. 706; *Note* in 16 Am. St. Rep. p. 613; *State ex rel.* v. *Jersey City*, 26 L. R. A. 281; *Chicago & Cal. R. R. Co.* v. *Whiting, etc. St. R. R. Co.*, 26 L. R. A. 337, 47 Am. St. Rep. 264; *Rafferty* v. *Central Trac. Co.*, 30 Am. St. Rep. 763; *Pennsylvania R. R. Co.* v. *Montgomery Pass. Ry. Co.*, 27 L. R. A. 766, 46 Am. St. Rep. 659 ; *Green* v. *City Ry. Co.*, 44 Am. St. Rep. 288; *C. B. & Q. R. R. Co.* v. *West Chicago R. R. Co.*, 29 L. R. A. 485; *Taylor* v. *Portsmouth St. Ry. Co.*, 64 Am. St. Rep. 216; *Zehren* v. *Milwaukee Elec. Ry. Co.*, 67 Am. St. Rep. 844, 41 L. R. A. 575.

ELECTRIC SUBURBAN FREIGHT AND PASSENGER RAILWAYS.—*Pennsylvania R. R. Co.* v. *Montgomery Pass. Ry. Co.*, 46 Am. St. Rep. 659, 27 L. R. A. 766; *Chicago & N. W. Ry. Co.* v. *Milwaukee & Racine Ry. Co.*, 60 Am. St. Rep. 142, 37 L. R. A. 856.

POLES FOR ELECTRIC RAILWAYS.—*Taggart* v. *Newport St. Ry. Co.*, 7 L. R. A. 205; *State ex rel.* v. *Jersey City*, 26 L. R. A. 283; *State ex rel.* v. *Trenton Pass. Ry. Co.*, 33 L. R. A. 129.

STEAM COMMERCIAL RAILROADS.—*Adams* v. *Chicago, B. & N. R. R. Co.*, 12 Am. St. Rep. 644, 1 L. R. A. 493; *Theobald* v. *Louisville, etc. Ry. Co.*, 14 Am. St. Rep.

included therein (Laws 1889, p. 273); that the common council of said city, deeming it expedient to lay out a street and establish the grade thereof upon the line of said road, attempted to do so in the manner prescribed in section 90 of said act, but failed to comply strictly with its provisions. An ordinance was passed and approved, in pursuance of which said street was graded and graveled, and a strip of said land, one hundred and twenty-eight rods in length, and one hundred and sixty feet in width, adjoining the same, was assessed for the improvement in the sum of $315.02, and the amount thereof entered in the docket of city liens; but, the assessment becoming delinquent, a warrant for its collection was issued, and the marshal, obeying the command thereof, levied upon and threatened to sell the premises assessed, to prevent which this suit was instituted. The cause being at issue, was referred to A. C. Woodcock, Esq., who took the evidence, from which he found, in substance, that notwithstanding the council had not complied with the provisions of section 90, *supra*, in establishing said street, section 98 of the charter authorized it to change the road into a street, and provided that, when so changed, jurisdiction thereof should be thereupon transferred from the county to the city, and recom-

564, 4 L. R. A. 739; *Lamm* v. *Chicago, St. P. & O. R. R. Co.*, 10 L. R. A. 268; *Nichols* v. *Ann Arbor & Y. R. R. Co.*, 16 L. R. A. 371; *Note*, 16 Am. St. Rep. at p. 612; *Western & A. Ry. Co.* v. *Alabama, etc. Ry. Co.* 17 L. R. A. 474; *White* v. *Northwest, etc. R. R. Co.*, 22 L. R. A. 625, 37 Am. St. Rep. 639; *Gustavson* v. *Hamm*, 22 L. R. A. 565; *Montgomery* v. *Santa Ana Ry. Co.*, 25 L. R. A. 654, 43 Am. St. Rep. 89.

ELEVATED STREET RAILROADS.—*Pond* v. *Metropolitan Elev. Ry. Co.*, 8 Am. St. Rep. 734; *Abendroth* v. *Manhattan Ry. Co.* 11 L. R. A. 634, 19 Am. St. Rep. 461; *Kane* v. *New York Elev. Ry. Co.*, 11 L. R. A. 640; *Selden* v. *City of Jacksonville*, 14 L. R. A. 370, 29 Am. St. Rep. 278; *Moore* v. *New York Elev. Ry Co.*, 14 L. R. A. 731; *Koch* v. *North Avenue R. R. Co.*, 15 L. R. A. 377; *Doane* v. *Lake St. Elev. Ry. Co.*, 36 L. R. A. 97, 56 Am. St. Rep. 275.

TELEGRAPH AND TELEPHONE POLES.—*American Telephone Co.* v. *Smith*, 7 L. R. A. 200: *Note*, 16 Am. St. Rep. at p. 614; *Western Union Telegraph Co.* v. *Williams*, 19 Am. St. Rep. 908, 8 L. R. A. 428; *Stowers* v. *Postal Telegraph Co.*, 24

mended that the temporary injunction theretofore issued be dissolved and the suit dismissed. The court approved the report, and gave a decree in accordance therewith, from which plaintiff appeals.

AFFIRMED.

For appellants there was an oral argument and a brief by *Messrs. L. Bilyeu* and *Joshua J. Walton,* urging these points :

A highway or county road is not a street.

To change a county road into a street will add new and increased expenses to the highway, and subject the land of the owner to other and greater servitudes. This additional servitude is property : *Dyckman* v. *New York,* 5 N. Y. 439 ; *Philadelphia* v. *Dickson,* 38 Pa. 249 ; *Heiple* v. *East Portland,* 13 Or. 97.

A municipal corporation has no inherent or implied power in the nature of eminent domain to condemn lands, or any interest, right or title therein, or to condemn any property rights for local improvements : *Philadelphia* v. *Dickson,* 38 Pa. 249 ; *Water Works Co. of Indianapolis* v. *Burkhart,* 41 Ind. 364 ; *State, Durant* v. *Jersey City,* 25 N. J. L. 310 ; *Harbeck* v. *Toledo,* 11

Am. St. Rep. 290, 12 L. R. A. 864; *Eels* v. *American Telephone Co.,* 25 L. R. A. 640; *People* v. *Eaton,* 24 L. R. A. 721; *Chesapeake Telephone Co.* v. *MacKenzie,* 28 Am. St. Rep. 219; *Cater* v. *Northwestern Telephone Co.,* 51 Am. St. Rep. 543, 28 L. R. A. 310; *Pacific Postal Telegraph Co.* v. *Eaton,* 62 Am. St. Rep. 390, 39 L. R. A. 722; *Magee* v. *Overshiner,* 40 Am. St. Rep. 370, 65 Am. St. Rep. 358.

SEWERS AND DRAINS.—*Note* in 17 L. R. A. at p. 479.

WATER AND GAS PIPES AND PIPE LINES.—*Note* in 17 L. R. A. at p. 480; *Kincaid* v. *Indianapolis Gas Co.,* 19 Am. St. Rep. 113, 8 L. R. A. 602; *Huffman* v. *State,* 69 Am. St. Rep. 368.

MARKETS.—*Notes* in 16 Am. St. Rep. at p. 614, and 17 L. R. A. at p. 486.

MISCELLANEUS.—*Note* in 17 L. R. A. at p. 481.

—REPORTER.

Ohio St. 219; *People* v. *Brighton*, 20 Mich. 57; *Sheldon* v. *Kalamazoo*, 24 Mich. 383; *Heiple* v. *East Portland*, 13 Or. 97.

As a county road the property of the plaintiff was not liable to the assessment tax and burden now sought to be enforced, and to make it so liable it must become a street.

For respondent there was a brief over the names of *Geo. B. Dorris* and *E. R. Skipworth*, with an oral argument by *Mr. E. R. Skipworth.*

The entire extension of Eighth Street and the establishment of Blair Street was upon, along, and within a county road within the corporate limits of the City of Eugene. There being no taking of property in this case, and no damages to appellant, she cannot be heard to complain: Elliott, Roads & Streets, pp. 315, 316; *Springfield* v. *Connecticut River R. R. Co.*, 4 Cush. 72; *West Boston Bridge* v. *Middlesex County Comrs.*, 10 Pick. 272; *East Portland* v. *Multnomah County*, 6 Or. 62; *Multnomah County* v. *Sliker*, 10 Or. 65.

Where a new highway (street) is proposed to be established or laid out, notice, etc., must be given, for the reason there is a taking of private property for public use, and therefore damages, hence section 90 of the city charter of 1889, and when there is no taking and no damage the converse is true, hence section 98: 1 Dillon, Mun. Corp. § 71; 2 Dillon, Mun. Corp. §§ 680, 681; *Barnes* v. *District of Columbia*, 91 U. S. 540, 23 L. ed. 440.

Whenever the legislature incorporates a city, or extends the corporate limits of a city, public roads or public highways are included in said incorporation or extension, and, such being the case, eminent domain was, at the time of laying out said roads or highways, duly exercised,

and all the forms of law complied with : Sutherland, Stat. Constr. § 240 ; *Foster* v. *Collner*, 107 Pa. 305 ; *State ex rel. Blinebury* v. *Mann*, 21 Wis. *685 ; *Chapman* v. *Miller*, 128 Mass. 269 ; Elliott, Roads & Streets, pp. 313, 315, 316 ; *Springfield* v. *Connecticut· River R. R. Co.*, 4 Cush. 72 ; *West Boston Bridge* v. *Middlesex County Comrs.*, 10 Pick. 272 ; *East Portland* v. *Multnomah County*, 6 Or. 62 ; *Multnomah County* v. *Sliker*, 10 Or. 65.

Agricultural lands within the corporate limits of a city can be made to respond for street assessments the same as other property within the city : 2 Dillon, Mun. Corp. § 795 ; Charter of the City of Eugene, 1893, §§ 67, 74 ; 15 Am. & Eng. Enc. Law (1 ed.), p. 1013 ; *Linton* v. *Athens*, 53 Ga. 588 ; *Martin* v. *Dix*, 52 Miss. 53 (24 Am. Rep. 661); *Barker* v. *State*, 18 Ohio, 514 ; *Kelly* v. *Pittsburgh*, 85 Pa. 170 (27 Am. Rep. 633).

MR. JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

It is contended by plaintiff's counsel that the public has an easement only in a county road, while a qualified fee in the street is dedicated to, or condemned for, the public use ; that a county road is laid out, built, and kept in repair by taxes collected from residents of the whole taxing district, and from property situated therein, while a street is usually established and improved by assessing the real property abutting thereon, and hence changing a county road into a city street imposes upon the premises claimed to have been improved additional burdens, and that this supplemental servitude constitutes private property, the taking of which for a public use is prohibited by the organic law of the state, except upon the payment of a just compensation (Const. Article I, § 18); that the power of a municipal corporation to exercise the

right of eminent domain will not be implied, and, while section 98 of the charter authorizes the council to establish a street upon said county road, this can be done only by strictly pursuing the mode prescribed in section 90 of the act of incorporation, which is the measure of its power, but, the council having failed to observe such requirements, jurisdiction to improve said road was never acquired, and hence the assessment is void, and the court erred in dismissing the suit. It is maintained by defendant's counsel, however, that section 90 applies only in cases where a street is to be established over premises where no highway theretofore existed, and, it being admitted that no additional land was appropriated by changing the road into a street, plaintiff sustained no injury in consequence thereof, and hence compliance with the requirements of said section was unnecessary.

The provisions of the charter to which reference has been made are as follows :

"Sec. 90. Whenever the council shall deem it expedient to open, lay out, establish, widen, straighten or extend a street or alley, it shall cause the city surveyor to survey such proposed new street or extension or line to which the width is to be changed or straightened, and make a report thereof containing a plat of the survey of such street or alley, of the portion of each lot or part thereof required to be appropriated for such street or alley, which report, if satisfactory to the council, shall be adopted by an ordinance embodying the same ; *provided*, that before the adoption thereof, the recorder shall give notice of the filing of such report by publication for two weeks in some newspaper published in the City of Eugene, or by written notices posted for two weeks at three public places in said city, and at the next meeting of the council, after the expiration of such notice, present to it the said report, and attached thereto a copy

of such notice, with the proof of publication or posting indorsed thereon. Thereafter, and within thirty days from the adoption of such report, the council shall appoint three disinterested freeholders of the City of Eugene, no kin to any owner or person interested in any property to be appropriated, and possessing the qualifications of jurors in courts of justice in this state, to view such proposed street or alley, and make an assessment of the damages, if any, to the respective owners of the lots and parts of lots appropriated, and to report the same to the council. The said viewers shall meet at such time as may be designated by the council, and after having been duly sworn or affirmed to discharge their duties faithfully, shall proceed and view the whole distance of said proposed street or alley and ascertain and determine how much less valuable the premises of such owners, respectively, would be rendered by the opening of the same. If the council is satisfied that the amount of damages assessed by said viewers, or by the circuit court, upon appeal, as hereinafter provided, is just and equitable, and that the proposed street or alley will be of sufficient importance to the public to cause the damages so assessed and determined to be paid by the city, the council shall order the same to be paid to the said owners, respectively, out of the treasury as other claims against the city are paid; but if in the opinion of the council such street or alley is not of sufficient importance to the public to cause the damage to be paid by the City of Eugene, the council may refuse to open such street or alley, or extend or widen the same, as the case may be, unless the damages, or such part thereof as the council may think proper, shall be paid by private parties."

"Sec. 98. The common council has authority and is hereby authorized, when it shall deem it expedient, to

open, establish and locate streets upon the road-bed of, and upon or across any county road or public highway within the corporate limits of the City of Eugene; and when so located or established, said county roads or public highways shall be and become public streets of said city and subject to jurisdiction and control of the council the same as other streets.''

It was virtually conceded at the hearing by counsel for the respective parties that if it was necessary to pursue the method prescribed in section 90, in order to establish a street upon the line of the county road, the means adopted were ineffectual to confer jurisdiction.

1.    An important question to be considered is whether a change, by authority of the legislative assembly, of a county road to a city street, imposes an additional servitude upon the real property over which the highway is constructed.    In *Lankin* v. *Terwilliger*, 22 Or. 97, it is held that by the location of a county road the public only acquires an easement in the land, while the fee remains in the owner, and when the road is vacated by public authority, the land immediately reverts to the owner, freed from the easement.    The heirs of James Huddleston, deceased, therefore, had a reversionary interest in the land over which the highway was located; and plaintiff, by reason of her trust, was entitled to the possession thereof when the road should be vacated by proper authority:  *Phillips* v. *Dunkirk R. R. Co.*, 78 Pa. 177.    The statute regulating the recording of town plats, and vacating streets provides, in general terms, that when a town is laid out the proprietor must record the plat thereof in the recorder's office in the county in which the same is situated:  Hill's Ann. Laws, § 4178.    Every donation or grant to the public of a street marked as such on said plat shall be considered to all intents and purposes as a general warranty to the donee, or grantee, for the uses

and purposes intended by the donor, or grantor : Id. §
4180. When a street is vacated, the land theretofore
used as a highway shall be attached to the lots or ground
bordering on such street, and all right or title thereto
shall vest in the person, or persons, owning the property
on each side thereof in equal proportion, according to the
length or breadth of such lots or ground, as the same
may border on such street : Id. § 4184. In *McQuaid* v.
*Portland Ry. Co.*, 18 Or. 237 (22 Pac. 899), it is held that
the fee of a street is either in the adjacent lot owner, or
remains in the dedicator. Mr. Chief Justice THAYER,
considering section 4180, *supra*, in deciding the case, and
discussing the effect of a dedication or condemnation of
a street, says : "The public may have an irrevocable
right to the use of the street, but how can it acquire the
fee to the land? The fee must vest in some one having
a legal capacity to take it. It must be a natural or arti-
ficial person—must be some one having a legal entity.
The declaration that the fee in such case is in the public,
meaning the general mass of the people, without regard
to any legal organization, although often made use of,
is, to my mind, absolutely absurd. The public, as a mass,
does not, in my opinion, possess any such capacity."
While the question considered in that case was not
deemed very important, the reasoning convinces us that
the public acquires only an easement in a street which
has been dedicated or condemned for its use. The in-
terest of the public in a street or road being an easement
only, the title to the fee was not changed by converting
the road into a street, and hence no necessity existed for
acquiring a right which the public already enjoyed :
*People* v. *Kerr*, 27 N. Y. 188.

2.   The public easement in a county road is limited to
the uses to which such a highway is commonly subjected,
and it must be presumed that the condemnation of the

land for such road by the county court was made with reference to such uses. The road was undoubtedly established over the particular route selected to promote travel between objective points, thereby facilitating the transportation of passengers and property by the mode in vogue when the highway was adopted. The imposition of a new servitude upon the land, in addition to and distinct from that to which it was originally subjected when taken for a highway, the obstruction of the abutting proprietor's access to the street, or the impairment of his right to light and air, constitutes a taking of private property for a public use, within the meaning of the fundamental law of the state, for which compensation must be made for the damages which necessarily ensue :   Cooley, Const. Lim. *557 ;   Elliott, Roads & S. 155 ;   *Willamette Iron Works* v. *Oregon Ry. &. Nav. Co.*, 26 Or. 224 ( 29 L. R. A. 88, 37 Pac. 1016, 46 Am. St. Rep. 620) ; *Imlay* v. *Union Branch R. R. Co.*, 26 Conn. 249 (68 Am. Dec. 392) ; *Milhau* v. *Sharp*, 15 Barb. 193 ; *Story* v. *New York Elevated R. R. Co.*, 90 N. Y. 122 (43 Am. Rep. 146) ; *State* v. *Laverack*, 34 N. J. L. 201 ; *Heard* v. *City of Brooklyn*, 60 N. Y. 242 ; *Strong* v. *City of Brooklyn*, 68 N. Y. 1. The ordinary mode of travel in cities at the present time is the same as that in vogue in the rural districts when the road was established. The use of the highway as a street will not be in addition to or distinct from that originally appropriated, and hence the conversion of the road into a street does not constitute a taking which demands additional compensation therefor on account of such use :   *Williams* v. *New York Central R. R. Co.*, 18 Barb. 222 ; *Fagan* v. *City of Chicago*, 84 Ill. 227.

"The legislature of the state," says Judge Dillon in his work on Municipal Corporations, 3 ed., § 656, "rep-

34 OR.—23.

resents the public at large, and has    *   *   *   full and permanent authority over all public ways and public places." In *Portland, etc. R. R. Co.* v. *Portland,* 14 Or. 188 (58 Am. Rep. 299, 12 Pac. 265), it is held that an act of the legislative assembly granting the use of a public levee of the City of Portland for railway purposes was a valid exercise of the lawmaking power. Mr. Chief Justice LORD, in rendering the decision, says: "The interest in the use of the streets and highways and public places, and their uses, being *publici juris*, the power of regulating such use is in the legislature, as the representative of the whole people." To the same effect, see *East Portland* v. *Multnomah County,* 6 Or. 62; *Multnomah County* v. *Sliker,* 10 Or. 65. The legislature has plenary power to delegate to a municipal corporation or other agency the right to lay out, establish and open highways for public use, and may also change its trustees, and impose upon the substituted instrumentality the duty of keeping such highways in repair: *Simon* v *Northup,* 27 Or. 487 (30 L. R. A. 171, 40 Pac. 560); *Little Nestucca Toll Road Co.* v. *Tillamook County,* 31 Or. 1 (65 Am. St. Rep. 802, 48 Pac. 465). Judge Elliott, in his work on Roads and Streets (p. 313), in speaking of the effect of the incorporation of a city upon the highways therein established by county authority, says: "Where there is no statute, the incorporation of a city seems naturally to imply that the highways within its territorial limits become streets, and, as such, subject to the control of the municipality. The erection of such a corporation is, in truth, simply the creation of a new instrumentality of government; it comes into existence with the rights, powers and duties of a governmental subdivision; and it is but reasonable to conclude that as to such matters as streets, which peculiarly pertain to municipal corporations, the authority of other gov-

ernmental corporations is excluded.'' In *McGrew* v. *Stewart*, 51 Kan. 185 (32 Pac. 896), the limits of a city were extended so as to include territory upon which a public highway existed. After the extension of the city boundaries, the council caused a sidewalk to be built along the highway, and assessed the cost thereof against the abutting property; and, in a suit to enjoin the collection of the assessment, it was held that upon the annexation of the territory the highway was impressed with the character of a street, and became subject to the exclusive control of the city authorities, and to the liabilities and servitudes of all other streets within the city. To the same effect, see 15 Am. & Eng. Enc. Law (1 ed.), p. 1017; *Cowan's Case*, 1 Overt. 311; *McCullom* v. *Black Hawk County*, 21 Iowa, 409; *Clark* v. *Commissioners*, 14 Bush, 166; *Ottawa* v. *Walker*, 21 Ill. 605 (71 Am. Dec. 121). Section 98 of the charter, however, shows that the County Court of Lane County was not devested of jurisdiction of the road, notwithstanding the incorporation of the city, until the council deemed it expedient to establish a street over it. In *State* v. *Jones*, 18 Tex. 874, it is held, under a similiar provision contained in a charter, that until the council acts under the power conferred, the general authority of the county court over the subject-matter continues to exist, and may be exercised.

3. It is argued that the uses to which streets are ordinarily put are greater and more numerous than those to which a county road is subjected, and particularly so with reference to the laying of pipes and the construction of drains, sewers, and culverts in streets: 2 Dillon, Mun. Corp., § 688. But Judge Elliott, in his work on Roads and Streets (p. 311), anticipating such contention, says: ''Where land is dedicated or appropriated for a suburban road, the implication must be that it shall be used as the

convenience and welfare of the public may demand, although that demand may be augmented by the increase in population, or by a town or city springing up in the territory traversed by the road." In *Malone* v. *Toledo*, 28 Ohio St. 643, a strip of land one hundred feet wide in the City of Toledo was appropriated for use as a canal, Thereafter this strip was transferred by the state to said city in pursuance of an act of the legislature which authorized the city to enter upon, improve, and occupy said premises as a public highway, and for the use of water pipes for sewerage purposes. In a suit, by one claiming to own a portion of said tract, to enjoin the city from interfering with his possession, it was held that, a canal and street being public highways, the uses of either were of a public nature and of a like kind, and that the use of the canal for water pipes and sewers was not inconsistent with that to which it had been originally applied. To the same effect, see *Crooke* v. *Flatbush Water Works Co.*, 29 Hun. 245 ; *Cummins* v. *Seymour*, 79 Ind. 491 (41 Am. Rep. 618).

4. The change of a road to a street renders the adjacent property liable to assessment for improvement to which it was not exposed under existing law prior to the change, and this presents the question whether such burden constitutes an additional servitude, for which compensation must be made. Mr. Mills, in his work on Eminent Domain (§ 34), says : "A change from a highway to a turnpike charging toll is not such an essential change as to require compensation to adjoining owners. When a highway is taken for a turnpike, it does not cease to be a highway, and the land does not revert to the owner. The payment of tolls to the turnpike company is in lieu of payment of taxes to support the road. The change is only a change of mode in sustaining the road, and not a change of use." See, also, Elliott,

Roads & S. 161; Cooley, Const. Lim. *546; *Benedict
v. Goit,* 3 Barb. 459; *Walker v. Caywood,* 31 N. Y. 51;
*Wright v. Carter,* 27 N. J. L. 76; *Douglass v. Boonsborough
Turnp. Co.,* 22 Md. 219 (85 Am. Dec. 647); *Callison
v. Hedrick,* 15 Gratt, 244; *Panton Turnp. Co. v. Bishop,*
11 Vt. 198; *Carter v. Clark,* 89 Ind. 238; *Chagrin Falls
Road Co. v. Cane,* 2 Ohio St. 419; *Malone v. Toledo,* 28
Ohio St. 643; *Commonwealth v. Wilkinson,* 16 Pick. 175
(26 Am. Dec. 654); *Murray v. Berkshire County Comrs.,*
12 Met. (Mass.) 455. The right to compensation being
founded upon a change in the use, and not upon an alter-
ation in the manner of maintaining the highway, the
assessment of benefits for the improvement of the street
does not constitute such an additional taking of private
property for public use, within the meaning of the or-
ganic act, as to necessitate compensation therefor. To
hold that plaintiff is entitled to compensation by reason
of the change in the method of keeping the highway in
repair would be equivalent to maintaining that the legis-
lative assembly could not alter the mode of collecting
road taxes after the highway was once established—a
mere statement of which shows the fallacy of the argu-
ment. Judge Elliott, in his work on Roads and Streets
(p. 315), in discussing this subject, says: "If we have
not reasoned ill, a suburban servitude may not only be
greatly augmented, but, in a measure, transformed, by
the demand of the public welfare. This conclusion has
for its ultimate foundation the old maxim, 'That regard
be had for the public welfare is the highest law,' and it
receives support from the principle that men are pre-
sumed, when they do an act, to contemplate the natural
consequences which may result. It is also true that the
benefit which the owner of the servient estate receives
from the increase in population and the building up of
cities far more than compensates him for the increased

burden of the servitude which these things produce, so that he suffers no damages, and without damages there can be no right of action.''

5.   The rule is well settled that the remedy prescribed by statute for the condemnation of private property for a public use must be strictly pursued, or the appropriation may be enjoined ; for no prerogative of sovereign power should be watched with greater vigilance than that which takes the property of the individual, and devotes it to a public use :   *Decatur County Commissioners* v. *Humphrey*, 47 Ga. 565 ;   *Dyckman* v. *New York*, 5 N. Y. 434.

6.   In the light of this rule, we will examine sections 90 and 98 of the charter, to ascertain, if possible, the legislative intent with reference to the manner to be pursued by the council in changing a road to a street. It will be remembered that section 90 requires the council to ''cause the city surveyor to survey such proposed new street, or extension, or line to which the width is to be changed or straightened ;'' thereby impliedly, at least, declaring it to be unnecessary to survey a public road already in existence within the limits of the city, since such highway, on being changed from a road to a street, is not thereby rendered a ''new'' street to be opened or widened, a ''new'' extension to be laid out or established, or a ''new'' line.   Section 98 authorizes the council ''to open, establish, and locate streets upon the roadbed of, and upon or across any county road or public highway within the corporate limits of the City of Eugene ;'' and construing, as we must, sections 90 and 98 *in pari materia*, it is quite apparent that the legislative assembly intended that the provisions of section 90, *supra*, should only be invoked when a ''new'' street is to be opened or widened, a ''new'' extension to be laid out, or a ''new'' line established, except when, in changing from a road to a street, addi-

tional property is required to be appropriated, or a new use is to be imposed upon the right already acquired. In the change made, no more land was taken, no different title acquired, and no alteration in the use effected; and, such being the case, the legislative assembly was not obliged to provide for a new condemnation, in view of which we are led to believe that the council, by adopting the ordinance referred to, accepted the terms of the grant, and changed the road into a street, under the provisions of section 98, and that section 90 relates to the opening of streets where no highway theretofore existed, or where a material change in the use is contemplated, and that the attempt in the case at bar to pursue the method prescribed in section 90 was unnecessary; and hence the decree is affirmed.

<div align="right">AFFIRMED.</div>