[Civ. No. 4721. First Appellate District, Division One.—June 19, 1924.].

ELLA W. COLLOPY et al., Appellants, v. UNITED RAILROADS OF SAN FRANCISCO (a Corporation), Respondent.

[1] EASEMENTS — CONVEYANCE OF LAND FOR HIGHWAY PURPOSES — KNOWLEDGE OF INTENDED USE — ADDITIONAL COMPENSATION — ESTOPPEL.—Where the owners of land abutting upon a county road, for an agreed and specified consideration, convey a portion of said land to the county, with the knowledge that the purpose of acquiring said portion of said land by the county is to change the grade of the road and to relocate the street railway tracks thereon, said owners are concluded by their deed from thereafter claiming additional damages from the street railway company by reason of the use by said company of the portion of said land so conveyed to the county or by reason of the destruction of their right of egress and ingress to the county road, due to the lowering and changing of the grade.

[2] ID. — DAMAGES—AGREED CONSIDERATION—PRESUMPTION.—Where a land owner agrees to convey a right of way across his land, the consideration received by him covers all damages to which the land owner would have been entitled in a regular condemnation proceeding; and, in such a case, he is presumed to have contemplated and arranged for all such damage in fixing the consideration for the contract, and he is therefore remitted to it.

[3] ID.—ADDED USES—IMPLICATION.—Where a land owner conveys a right of way across his land, the one acquiring such an easement is not limited in the use thereof to the particular methods in vogue

1. See 10 Cal. Jur. 617.

3. Additional servitudes upon highways, notes, 28 Am. Rep. 267; 37 Am. Rep. 224; 56 Am. Rep. 250; 25 Am. St. Rep. 478; 28 Am. St. Rep. 230; 51 Am. St. Rep. 549; 106 Am. St. Rep. 232. See, also, 13 Cal. Jur. 369; 13 R. C. L. 139.

when the easement was granted, but he may take advantage of new and improved methods of transportation, without paying any additional compensation because thereof; and where land is conveyed for a public highway, the implication must be that it will be used as the convenience and welfare of the public may demand, although that demand may be augmented by the increase of population or the advancement of civilization.

(1) 20 C. J., p. 870, sec. 299 (Anno.).    (2) 20 C. J., p. 1181, sec. 542 (Anno).    (3) 20 C. J., p. 709, sec. 167 (Anno.), p. 716, sec. 171.

APPEAL from a judgment of the Superior Court of San Mateo County. George H. Buck, Judge. Affirmed.

The facts are stated in the opinion of the court.

Theodore M. Stuart, Sullivan & Sullivan and Theo. J. Roche for Appellants.

Wm. M. Abbott, K. W. Cannon and Ross & Ross for Respondent.

TYLER, P. J.—Action for damages to real property and for abatement of an alleged nuisance.

The complaint recites the corporate existence of defendant railway company and the operation and management by it of street railroads and suburban and interurban lines of electric roads in the counties of San Francisco and San Mateo. The facts upon which the complaint is based, chronologically stated, show that for a long period of time prior to October 6, 1890, plaintiffs were the owners of the parcel of land described in the complaint. On the date last mentioned the county of San Mateo by ordinance granted to the predecessors in interest of defendant company a franchise for the construction, maintenance, and operation of a street railroad, with all necessary side-tracks, over the main county road. This road passed through the town of Colma and along and adjacent to plaintiff's property. The ordinance required that the grade of the railroad should conform to the grade to be established or re-established by the board of supervisors of the county or their successors, and that the particular portion of the highway upon which the railroad was to be located or relocated should be designated by the county surveyor under the direction of the board. It also expressly provided

that the rights and privileges granted were to be held by the grantees and their successors subject to the general laws of the state, and also subject to such requirements and restrictions which might thereafter be imposed by the board.

The street railroad was thereafter constructed and operated under the ordinance, and some nine years later appellants conveyed to the railroad company a small portion of their property for county road purposes, which was thereafter graded off so that it might be used for said purposes, the grading leaving an embankment some two feet high. The railroad as originally constructed was located in the center of the highway, and was some twenty-five or thirty feet distant from appellants' property line. Some twenty-three years later, on March 24, 1913, and while the defendant company was thus maintaining and operating its railway, viewers were appointed by the board of supervisors of San Mateo County to survey and lay out a proposed new road from the San Francisco-San Mateo County line. The proposed route paralleled the county road upon which the tracks of defendant company were situated, but upon approaching one of the streets at Colma the route curved to the left and crossed a small portion of plaintiffs' lands. The property being thus affected by the proposed improvement the California highway commission, which had through its engineering department inaugurated the change in the highway, addressed a letter to Mr. Collopy, advising him of the filing of the petition for the changed route, and also of an appointment of certain viewers, and requested that he meet them on the property to discuss the matter of acquiring that portion of plaintiffs' property which was affected by the survey. The parties accordingly met, and the parcel which was required was staked off, and the question of the new grade and how it would affect plaintiffs' other land was discussed, and an agreement between the parties was reached as to the amount of money plaintiffs should receive as damages by reason of the change. This agreement was in writing, and it recited, among other things, that ''in consideration of the location of a public highway across said land and of the benefits to accrue to G. M. Collopy thereby, and the payment by county warrant of twelve hundred ($1,200) dollars, hereby agrees to grant by a proper deed of easement to the county of San Mateo, State of California, or to the State of

California, as hereinafter provided, for the purpose of said highway a strip of land across the above described land whereon to build said highway, as located by the department of engineering of the State of California . . . And G. M. Collopy hereby waives all claim and damages whatsoever for and on account of said location and construction of said highway as aforesaid.''

Pursuant to and in conformity with this agreement plaintiffs on May 5, 1913, executed and delivered to the county their deed of a right of way with incidents thereto for a public highway over and across the portion of the lands of plaintiffs so selected. After the execution of the deed the fence line of the property was moved back to the new line, and the land between the old fence line and the new fence is the land described in the deed executed by plaintiffs to the county. It consists of a strip some forty feet at its widest point, and it tapers off to a point at either end. At this time the tracks of the company ran in a curve around and in front of plaintiffs' property, and bordered upon and ran parallel to and along its entire frontage on the highway, a distance of some 450 feet. The deed of conveyance contained certain recitals, which had been incorporated in the agreement, to the effect that in consideration of the benefits to accrue to plaintiffs by reason of the location of the highway and other considerations they consented to the location and waived all claim for damages or compensation on account of its re-establishment. It further expressly provided that the state of California should have the right to adopt and approve as a state highway the whole or any part of the right of way granted.

On November 7, 1913, the California highway commission notified the president of defendant corporation to relocate and reconstruct its tracks so as to place the center line thereof in a position twelve feet westerly from the established easterly curb line, and thirteen feet easterly from the established center of the state highway. Two weeks later the commission also wrote a letter to the board of supervisors of San Mateo County concerning the removal of the defendant company's tracks, and inclosed a draft of an ordinance with reference thereto which the commission suggested the supervisors adopt. A like communication was sent to the supervisor for the district where plaintiffs' land was situ-

ated, asking that the board confirm the center line location, and requested that he assist in the passage of the proposed ordinance covering the matter. Pursuant to these various communications the board adopted an ordinance in conformity with the suggestions. The ordinance required that the defendant company relocate and reconstruct its tracks to conform to the change as outlined in the communication sent to its president by the state highway commission. In April, 1914, the company proceeded to make the directed change. In doing so it excavated the property conveyed by plaintiffs to the county to the established grade and removed its tracks thereto from the center of the highway, and it ever since has and is now maintaining and using them on the public highway. Some two years later and in 1916, just prior to the bar of the statute of limitations, appellants filed this action.

The complaint alleged the removal of the tracks from the center of the road without the consent of the plaintiffs. Damages were claimed in the sum of ten thousand dollars for the alleged wrongful taking of plaintiffs' lands and the use thereof by defendant company. An additional sum of five thousand dollars was prayed for on account of the destruction of plaintiffs' right of egress and ingress to the county road. By way of a second cause of action plaintiffs alleged that the operation of the heavy interurban cars over the tracks as relocated caused the dwelling-house of plaintiffs and the earth on which it rested to vibrate, thus rendering the use of the premises less comfortable and inhabitable and diminishing the value, for which reason an additional sum of five thousand dollars was claimed as damages, and the complaint also prayed that this nuisance be abated.

The case was tried by the court sitting without a jury. With the exception of proof of the alleged jarring of the house caused by the change of location of the tracks plaintiffs made no effort to segregate the different elements of damages and they confined their proof in support of their action to the testimony of two witnesses, who stated that in their opinion the removal of the tracks affected the value of the property in the sum of fifteen thousand dollars.

Upon the conclusion of the evidence the case was submitted on briefs September 30, 1919. Plaintiffs failed to present their opening brief until some two and a half years

later. Upon the filing of defendant's brief shortly thereafter the court in August, 1922, rendered judgment in favor of defendant, and plaintiffs appeal.

The substance of their contention is that neither the legislature nor a municipality can permit a street or highway to be taken, used, or encumbered in such a manner as will interfere with the rights of abutting owners, or permit any use of it which will amount to an additional burden, unless some provision for compensation is made, as such owners have special easements therein such as the right to ingress and egress, which cannot be taken away, materially impaired, or interfered with, even under legislative authority, without just compensation being made.

The principle that an ordinance affecting an easement must be taken in subordination to the paramount rights of an owner presents varied and very interesting questions, included in which are the subjects relating to the loss suffered and benefits acquired by abutting owners by reason of a change of grade in highways made imperative by the increase in traffic and the ever changing modes and means of travel, and the effect upon the owners of the original acquisition of lands for highway purposes when additional burdens are imposed thereon. These and other questions, while highly interesting, do not require extended discussion, for the principles announced in the cases upon the subject have in our opinion little bearing on the case.

[1] As above set forth it appears in evidence that the plaintiffs executed and delivered to the county a deed conveying a right of way and incidents thereto for a public highway. By the express terms thereof they signified their approval of the location, and they likewise waived all claims for damages or compensation for or on account of its establishment. The deed contains a provision that the state of California shall have the right to adopt and improve as a state highway the whole or any part of the right of way granted. There is also evidence in the record to show that plaintiffs knew that defendant's tracks were to be moved. The right of way agent for the highway commission testified that he discussed this subject with both plaintiffs. He further testified that before acquiring the property he advised them that it would be necessary to make a cut that would

67 Cal. App.—46

create an embankment on practically the entire distance of the frontage of plaintiffs' land which abutted the highway, starting with a small cut at a point where their barn is situated, which would be increased gradually to from seven to eight feet at the highest point. The testimony of one of the viewers is practically to the same effect. It is therefore manifest from the evidence that the only purpose of acquisition of the land by the county was to change the grade and relocate the tracks, and that this fact was known to plaintiffs. As intimated by the trial court, it is not conceivable that the county would pay the sum of twelve hundred dollars for the property for road purposes and its incidentals without intending to use it for such purpose, as the evidence shows that it was an inclined elevation and could not be used for any purpose unless it was graded. Under the evidence presented the trial court found, and, we think, correctly so, that plaintiffs are concluded by their deed.

The findings in substance show that the evidence was insufficient to warrant a recovery upon the second cause of action relating to the alleged injury caused by the vibration resulting from the cars, and that plaintiffs had abandoned the same. They further show that the damages, if any, claimed by plaintiffs by reason of the grading of the property for road purposes had been fully settled by the consideration paid to plaintiffs for the land for road purposes and incidentals thereto, and that plaintiffs by their deed having expressly waived any claim for damages which they might suffer on account of the establishment and use of the highway, were estopped from claiming the same. We fail to see how the court could have reached any other conclusion. The deed itself covered, in contemplation of law and by implication, all claims for damages. [2] Where a land owner agrees to convey a right of way across his land the consideration received by him covers all damages to which the land owner would have been entitled in a regular condemnation proceeding. In such a case he is presumed to have contemplated and arranged for all such damage in fixing the consideration for the contract, and he is therefore remitted to it (*Hord* v. *Holston Ry. Co.*, 122 Tenn. 390 [135 Am. St. Rep. 878, 19 Ann. Cas. 333, 123 S. W. 637] ; 2 Lewis on Eminent Domain, p. 845). [3]   Nor is one acquiring such an

easement limited in the use thereof to the particular methods
in vogue when the easement was granted.   As civilization ad-
vances and new and improved methods of transportation are
developed, these are in aid of and within the general pur-
poses for which highways are designed.   (*Cater* v. *North-
western etc.*, 60 Minn. 539 [51 Am. St. Rep. 543, 28 L. R. A.
310, 63 N. W. 111]).   An abutting owner, therefore, is
not entitled to be compensated anew for every improvement
in street or vehicle, or with every change made imperative
by such improvement, and especially so where he has made
a conveyance in full contemplation and knowledge of such
change.   Such in effect is the principle established in *Mont-
gomery* v. *Santa Ana etc. Ry. Co.*, 104 Cal. 186 [43 Am. St.
Rep. 89, 25 L. R. A. 654, 37 Pac. 786], and *Hayes* v. *Hand-
ley*, 182 Cal. 273 [187 Pac. 952].   See, also, *Albany* v. *United
States etc.*, 38 Cal. App. 466 [176 Pac. 705].

   Where land is conveyed for a public highway the impli-
cation must be that it will be used as the convenience and
welfare of the public may demand, although that demand
may be augmented by the increase of population.   The bene-
fits which an owner of the servient estate receives from the
increase in population and consequent building up of the
community usually far more than compensate him for the
increased burden he may claim to have suffered.   (*Huddle-
ston* v. *City of Eugene*, 34 Or. 343 [43 L. R. A. 444, 55 Pac.
868].)   True, in some instances a land owner may suffer a
loss, but he often obtains the benefit for nothing through
the increase of the value of his land, and he must bear the
burden in the less common case of the depreciation in value
in consequence of the work.   (*Morris* v. *Indianapolis*, 177
Ind. 369, [Ann. Cas. 1915A, 73, 94 N. E. 705].)

   Aside from these considerations, plaintiffs having, as the
evidence and findings show, been fully compensated for their
alleged injury, and having expressly waived any claims for
damages by reason of the improvement, they are estopped
by their agreement from claiming the same.

   Appellants complain of certain alleged errors in the rul-
ings of the trial court.   We do not deem a discussion of the
same necessary.   We have examined them, and in our opin-
ion they are without merit.

Other questions raised are controlled by the views herein expressed.

The judgment is affirmed.

Knight, J., and St. Sure, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 18, 1924.